See also D.C., 275 F.Supp. 146.

**PHILADELPHIA ELECTRIC COMPANY**

v.

**ANACONDA AMERICAN BRASS COMPANY et al.**

No. 41734.

United States District Court
E. D. Pennsylvania.
Aug. 1, 1969.

Harold E. Kohn, Dilworth, Paxson, Kalish, Kohn & Levy, David Berger, Cohen, Shapiro, Berger, Polisher & Cohen, Philadelphia, Pa., for plaintiffs.

Frank J. Kelley, Atty. Gen., Maxine Boord Virtue, Asst. Atty. Gen. of Michigan, Lansing, Mich., for intervenor-plaintiff.

Joseph W. Swain, Jr., Montgomery, McCracken, Walker & Rhoads, David F. Maxwell, Obermayer, Rebmann & Maxwell & Hippel, Robert W. Sayre, Saul, Ewing, Remick & Saul, Lewis H. Van Dusen, Jr., Drinker, Biddle & Reath, Samuel B. Fortenbaugh, Clark, Ladner, Fortenbaugh & Young, Arthur H. Kahn, Schnader, Harrison, Segal & Lewis, Henry T. Reath, Duane, Morris & Heckscher, Leonard J. Cook, Shapiro, Stalberg, Cook, Murphy & Kalodner, S. Gordon Elkins, Stradley, Ronon, Stevens & Young, John G. Harkins, Jr., Pepper, Hamilton & Scheetz, H. Francis DeLone, Dechert, Price & Rhoads, Oliver C. Biddle, Ballard, Spahr, Andrews & Ingersoll, Michael H. Malin, White & Williams, Philadelphia, Pa., Gaston, Snow, Motley & Holt, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

These private antitrust treble-damage actions have now been settled by agreement, except as against one defendant, with whom settlement arrangements have been worked out which will be completed in a few months. The sums to be paid in settlement total $22,175,000.00. Counsel for the plaintiffs have jointly petitioned for approval of counsel fees at the rate of 25% of the recovery, to be deducted from the settlement, together with expenses estimated at $50,000.00.

Earlier in this litigation, I ruled that certain of these actions were properly maintainable as class actions under Fed.R.Civ.P. 23, on behalf of various classes of claimants then defined. Philadelphia Electric Co. et al. v. Anaconda American Brass Co. et al., 43 F.R.D. 452 (D.C. 1968). As an aid to the management of the litigation, I further ruled that all class members would be required to file a Notice of Intention to Prove Damages, on or before a specified date, or be forever barred from asserting claims. The net result has been that a total of 1,481 claimants are entitled to share in the settlement. Of these, 1,380 have expressly engaged the petitioners to represent them, and have agreed to pay counsel 25% of the amount recovered, plus a pro-rata share of the expenses. The remaining 101 · claimants were all notified that the petition for counsel fees would be presented for approval at a hearing on July 11, 1969, and that any objection should be filed on or before July 9, 1969. Eight of these claimants have now expressed their support of counsel's petition, and three others have stated that they do not oppose it. Two claimants do not agree to the amount of the fee requested, but have stated their willingness to pay the petitioners a fee in whatever amount the Court deems appropriate; one claimant, the City of Seattle, has suggested that a 10% fee would be proper; and one group of claimants, the City of New York and various departments and agencies thereof [1] objected to the payment of any fee to the petitioners from its share of the settlement, and appeared at the hearing and argued in support of its objections. Eighty-two claimants failed to respond to the notice.

At the outset, it is important to make clear just what is, and what is not, before the Court for decision. This is not a petition to fix the statutory attorney's fee authorized by Section 4 of the Clayton Act, 15 U.S.C. § 15, to be assessed against the defendants in addition to treble damages. Compare: Farmington Dowel Products Co. v. Forster Mfg. Co., 297 F.Supp. 924 (D.C. Me. 1969); W. W. Montague & Co. v. Lowry, 193 U.S. 38, 24 S.Ct. 307, 48 L.Ed. 608 (1904). Neither is it a petition for approval of the contingent-fee agreements already entered into with most of the claimants. Rather, the petition asks that the shares of the 90 uncommitted or recalcitrant claimants be impressed with liens for

1. The five New York claims have been informally consolidated and treated as a single claim throughout this litigation. The same practice will be followed here.

counsel fees and expenses in accordance with the equitable principles laid down in Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1882), and followed in such cases as Central Railroad & Banking Co. of Georgia v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885) and Powell v. Pennsylvania R.R. Co., 267 F.2d 241 (3rd Cir. 1959); and that the amounts of the liens be fixed to correspond with what petitioners' 1,380 actual clients (and eleven others) have already agreed to pay.

The claims thus sought to be subjected to liens fall into three categories: (1) those of claimants who, while not expressly employing the petitioners as their counsel, are not otherwise represented in this litigation and have expressed no objection to the compensation sought; (2) those of claimants who have expressed their willingness to be represented by the petitioners, but who object to the amount (but not the fact) of compensation sought; and (3) that of New York, which has sought to reject the petitioners' representation, has appeared in this litigation through other counsel, and objects to paying the petitioners anything.

In short, my ruling on this motion will affect only 90 of the claims, and as to 89 of these, liability for some fee is not in dispute, and the only issue is the amount.

The fees sought by the petitioners are undeniably generous, at least when considered in the aggregate. On the other hand, contingent fees in class-actions frequently exceed the percentage suggested, and generally run about 20–25%. Hornstein, "Legal Therapeutics: The 'Salvage' Factor in Counsel Fee Awards", 69 Harv.L.Rev. 658 (1956).

 I have concluded that the 25% figure suggested in this case is reasonable, for the following reasons: (1) The abilities and standing of petitioning counsel are very high. (2) The results achieved were remarkably favorable to the interests of the class-members. (3) The enforcement of the antitrust laws in this case was solely due to the efforts of the petitioners, as the statute of limitations would have barred all of the claims here involved, but for counsel's enterprise and foresight in filing class actions. (4) The treble-damages feature of antitrust recoveries means that counsel can be generously paid without actual "cost" to the claimants; i.e., the fees of counsel merely reduce a windfall. And in antitrust litigation, the allocation of the recovery as between claimant and counsel should favor counsel somewhat more than in other fields, as an incentive to more alert enforcement. Cf. Dolgow v. Anderson, 43 F.R.D. 472 (E. D.N.Y. 1968) and cases there cited. (5) The 25% fee has already been agreed to by virtually all of the claimants. These are responsible governmental entities and substantial enterprises, for the most part represented by their own counsel; I am reluctant to suppose that they are all incorrect in their assessment of a fair and reasonable arrangement. Moreover, I can think of no persuasive reason for permitting discrimination in favor of the 89 claimants here involved, none of whom is entitled to any greater net share of the recovery than the other class-members.

The New York claim differs, in that New York entered a separate appearance and sought to intervene in the action; and its share of the settlement will amount to approximately $1,000,000. However, (a) the statute of limitations had expired several months before New York took action, and its entire claim would have been lost had petitioners not filed the class actions, and (b) the intervention issue was not resolved prior to settlement, and New York acquiesced in the settlement.

If these actions had not been settled, and if New York had persisted in its desire to have a substantial degree of control over its litigation, some resolution of the impasse would have been

achieved. This might well have taken the form of a severance of the New York claims in all respects, or even a re-definition of the class. But as matters now stand, New York has had the advantage of class status, and the settlement has eliminated all opportunity for authoritative resolution of differences over the control of the litigation. While it would be theoretically possible to decide now whether New York's application for intervention should have been granted, and if so what its status would then have been under amended Fed.R. Civ.P. 23 and 24, the effort would be fruitless for present purposes, since this petition must be decided on the basis of what actually did happen.

And what happened was that the petitioners salvaged approximately one million dollars for New York by bringing a class action. In my view, New York must either reject this benefit, or accept it *cum onere*. New York's share, in my opinion, is subject to a lien in favor of the petitioners for their services.

It must be recognized, however, that New York's own counsel have performed a great deal of work in pressing New York's claim, and thus have considerably lightened the burden of the petitioners. In my judgment, petitioners' 25% contingent fee arrangement should, in the case of the New York claims, be reduced to 15%. It will be so ordered.

### ORDER

And now, this 1st day of August, 1969, it is ordered that the petition of plaintiffs' counsel for award of counsel fees and costs is granted, and petitioning counsel are awarded, from that part of the settlement fund to be distributed to those class members and intervenor applicants who do not have fee agreements with plaintiffs' counsel, (a) a pro rata share of the out-of-pocket costs and expenses; (b) in the case of the New York claims, a counsel fee of 15%; and (c) in the case of all other claims, a counsel fee of 25%.

