**Harry C. DUNN et al.**

v.

**H. K. PORTER COMPANY, INC.**

**Bertha ZECOSKI and Marie Lee**

v.

**H. K. PORTER COMPANY, INC.**

**Civ. A. Nos. 76–1000 and 76–2105.**

United States District Court,
E. D. Pennsylvania.

Nov. 17, 1977.

On Motion for Reconsideration
Jan. 6, 1978.

Warren L. Soffian, Richard S. Hoffman, Philadelphia, Pa., for plaintiffs.

Charles J. Bloom, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This is a class action brought under Fed.R.Civ.P. 23(b)(3) to recover pension benefits under certain collective bargaining agreements. The parties have submitted a proposed settlement for Court approval pursuant to Fed.R.Civ.P. 23(e). In addition, class counsel have petitioned for attorneys' fees. We have decided that the fee matter should be considered prior to submission of the proposed settlement to the class members so that the class members will have an opportunity to consider the net recovery they may expect from the litigation.[1] Any final resolution of the fee question is contingent upon approval of the settlement as proposed and will be subject to any comments made by class members at the hearing on the reasonableness of the settlement.

The class, separated into three subclasses, was approved in Memorandum and Order of September 22, 1977.[1a] Plaintiffs' counsel have entered into private fee agreements with 220 of the 305 class members.[2] The private fee agreements provided for a 20% contingent fee on the individual class members' recovery. Some of the plaintiffs were offered fixed fee arrangements as an alternative to the contingent fee agreement, but only 16 class members elected that arrangement.

Plaintiffs' counsel contend that the contingent fee agreements should fix the standard for compensation in this case. The

---

1. The defendant has not contested the validity of the contingent fee agreements that plaintiffs' counsel have entered into with their clients. Thus, our scrutiny of these agreements at this stage of the case places us in the unfortunate stance of being "deprived of adversarial presentations". *Prandini v. National Tea Co.,* 557 F.2d 1015, 1021 (3d Cir. 1977). However, particularly in this case, where a disavowal of the contingent fee agreements will have a substantial impact upon the net amount received by class members, it is important that the attorneys' fee question be considered now. This procedure allows the class members to make an informed decision on whether to object to the settlement. *Prandini* does not counsel otherwise since that case involved statutorily authorized attorney's fees paid directly by the defendant whereas here we are concerned with the award of fees out of a common fund.

1a. The following subclasses were approved:
 a. those individuals who attained retirement age and retired from service with H. K.

Porter prior to the effective date of the collective bargaining agreement entered into at the Quaker Rubber Works, Inc.— Feb. 1969;
 b. those persons who attained retirement age and retired after Feb. 19, 1969 and before January 1, 1966, and
 c. those persons with sufficient age and service who, as of the date of their termination with H. K. Porter, qualified for benefits when they would have reached 65 and who were not receiving pensions as of January 1, 1976.

2. The fee agreements were divided among the three subclasses as follows:

| | Total Members | Fee Agreements | No Agreement |
|---|---|---|---|
| Pre 1969 Class | 41 | 34 | 7 |
| Post 1969 | 160 | 131 | 29 |
| Deferred Vested | 104 | 55 | 49 |
| TOTAL | 305 | 220 | 85 |

estimated present value of the settlement, if approved, is $1,423,438.00. Thus, if the fee agreements are enforced and a 20% fee is imposed upon the unrepresented class members, plaintiffs' counsel will be entitled to total compensation of $284,687.60.[3] We have grave reservations about an award of a fee of that magnitude in this case.

We do not for a moment suggest that the contingent fee agreements were obtained by any impropriety. Plaintiffs' counsel had represented class members in other matters prior to this case and many class members were familiar with counsel. However, this does not compel the conclusion that the fee agreements should be approved. "The Court is not questioning the good faith of counsel. It does raise a question of equity—whether the Court can, in good conscience, enforce a contract made with class members, who more likely than not, lack the sophistication, experience and education to act understandingly and deal with their attorneys on an equal basis at arm's length." *Kiser v. Miller,* 364 F.Supp. 1311, 1319 (D.C.D.C.1973), *aff'd in part and remanded in part sub nom. Pete v. United Mine Workers of America Welfare and Retirement Fund,* 170 U.S.App.D.C. 437, 517 F.2d 1267 (1974).

■ Clearly we have the power to review the contingent fee agreements to assure their reasonableness in all respects. This authority stems from two sources. First, "[i]n its supervisory power over the members of its bar, a court has jurisdiction of certain activities of such members, including the charges of contingent fees." *Schlesinger v. Teitelbaum,* 475 F.2d 137, 141 (3d Cir.) *cert. denied,* 414 U.S. 1111, 94 S.Ct. 840, 38 L.Ed.2d 738 (1973); *see Elder v. Metropolitan Freight Carriers, Inc.,* 543 F.2d 513, 518 (3d Cir. 1976). Second, because this is a class action, and in settle-

ment of a class action pursuant to Fed.R. Civ.P. 23(e), the court possesses control over all monies which compose the settlement fund including those that may be awarded as fees. *Magana v. Platzer Shipyard, Inc.,* 74 F.R.D. 61 (S.D.Tex. 1977).

■ Having determined that we shall scrutinize the fee agreements, we now turn to a consideration of the factors to be considered in weighing the reasonableness of the agreements. The level of the fee in this case, i. e., 20%, is not per se unreasonable. *See Entin v. Barg,* 412 F.Supp. 508 (E.D.Pa. 1976); *Dorfman v. First Boston Co.,* 70 F.R.D. 366 (E.D.Pa.1976). However, two other factors convince us that the fee agreements should not be enforced.

First, the fee agreements were entered into with unsophisticated individuals who may not have been aware of the impact of their decision. This case is not *Philadelphia Electric Co. v. Anaconda American Brass Co.,* 47 F.R.D. 557 (E.D.Pa.1969) where Judge Fullam approved contingent fee agreements entered into by clients who "were responsible governmental entities and substantial enterprises, for the most part represented by their own counsel." *Id.* at 559. The plaintiffs bear more resemblance to those in *Kiser v. Miller, supra.* In *Kiser,* the court refused to enforce fee agreements between counsel and class members because, inter alia, there was no showing that the class members possessed sufficient sophistication to negotiate with counsel nor was there any suggestion that the class members had consulted independent counsel about the standard of fees. 364 F.Supp. at 1319. These same considerations concern us here.

Second, there is a vast discrepancy between the award counsel would receive under the fee agreements and the fee as computed under the standards of *Lindy Bros.*

---

**3.** Plaintiffs' counsel contend that the contingent fee in this case will amount to only 16% because the defendant has agreed to pay plaintiffs' attorneys $50,000.00 which plaintiffs' attorneys have offered to credit to the amount due from their clients. This contention fails to account for the proposition that there is, "in reality, only one fund for both the class and the attorneys' fees." *Prandini v. National Tea Co., supra* at 1020. Presumably, this $50,000.00 would have been included in the total fund if it had not been earmarked for the attorneys' fees. Thus, we reject plaintiffs' counsels' position and will consider the contingent fee at the 20% level.

*Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973) (*Lindy I*) and *Lindy Bros. Builders, Inc. of Phila. v. American Radiator Sanitary Corp.,* 540 F.2d 102 (3d Cir. 1976) (*Lindy II*). As stated before, plaintiffs' counsel would receive $284,687.60 under the criterion set by the fee arrangements. Our calculation of a reasonable attorneys' fee following the guidelines of *Lindy* would result in a lodestar of approximately $46,000 and a total award of approximately $92,000 at this point. Thus, if we were to enforce the contingent fee agreements and impose a fee of 20% on the unrepresented class members, counsel would recover more than six times the lodestar and more than the three times the reasonable fee as computed in accordance with *Lindy.* On the facts of this case, absent a showing that the clients were sophisticated commercial persons who were aware of the consequences of their decisions, we find this fee excessive and refuse to award compensation to counsel based upon the contingent fee agreements. Rather, a reasonable fee will be awarded following the dictates of *Lindy.*

■ *Lindy* instructs us that the first step in computing a reasonable attorney's fee involves a consideration of counsels' hourly rates and the total time spent on the case. This computation will provide the lodestar which may be adjusted up or down by considering the contingent nature of the case or the quality of work provided by counsel.

In making our lodestar determination, we find that the hourly rates submitted by counsel are reasonable considering the background and experience of the attorneys. Further, we accept as reasonable counsels' submission of total hours worked. We find these submissions reasonable with respect to both the total hours worked and the hours expended in each category and step of the litigation. Based upon these findings, we compute the lodestar to be $46,358.00.[4]

We believe that several factors justify an increase in the lodestar figure. First with respect to the contingency factor discussed at length in *Lindy II,* 540 F.2d at 117, we note that plaintiffs faced difficult liability and damage problems on the claims of two of the subclasses. The actuarial funding provisions of the post-1969 collective bargaining agreements raise substantial questions about defendant's contribution obligation and the extent of that obligation. These liability and damage hurdles were heightened by the term of the collective bargaining agreement giving the defendant termination rights. This provision raised the question of the nature of the defendant's liabilities following termination of the collective bargaining agreement and exhaustion of the funds which defendant had contributed previously. Finally, at the outset of this litigation, plaintiffs' counsel were faced with the prospect of prolonged litigation against experienced and most able counsel retained by a client of considerable resources. Plaintiffs' counsel must have entered this litigation with the expectation that substantial expenditures of time might be necessary to secure a recovery.

Second, with respect to the quality factor, due weight must be given to the reasonably expeditious manner in which counsel have pursued their clients' interests. As noted in *Lindy II, id.* at 118, the court should be

---

**4.** We approve the following hourly rates and hours expended on this litigation:

| | Suggested Rate | Hours | Total |
|---|---|---|---|
| Jerome E. Bogutz | $100/hr. | 123.9 − 9.1 (fees) 114.8 | $11,480.00 |
| Warren L. Soffian | $ 60/hr. | 363.9 −67.3 (fees) 296.6 | $17,796.00 |

| | Suggested Rate | Hours | Total |
|---|---|---|---|
| Richard S. Hoffman | $ 60/hr. | 242.95 − 4.0 (fees) 238.95 | $14,337.00 |
| Alan Schnoll | $ 50/hr. | 68.4 −13.5 (fees) 54.9 | $ 2,745.00 |
| | | TOTAL | $46,358.00 |

conscious of "rewarding the use of efficient methods to expedite the case and penalizing the use of methods the predominant use of which was to delay or obstruct the proceedings." Further, "[q]uality in this sense includes efficiency. If the attorney achieves good results with a minimum time expenditure, the total award may be increased to reflect efficiency and benefit to the client." *Prandini v. National Tea Co.,* 557 F.2d 1015, 1019–20 (3d Cir. 1977). The speedy resolution of the dispute by settlement inures to the benefit of the pensioners because plaintiffs' counsel minimized the hours spent and assured that the proceeds will be distributed to class members as soon as possible. Finally, we think that the monetary benefit conferred upon the class by the settlement is very favorable. We conclude that the contingency and quality considerations warrant a doubling of the lodestar in this case.

We note finally that the fees that we have computed do not constitute the final fees to be awarded upon approval of the settlement. Plaintiffs' counsel estimate that an additional 40 hours will be required to secure approval of the settlement and manage distribution of the proceeds. Notice to the class members should inform the class members of the fees as computed in this Memorandum and contain an estimate of what further fees will be necessary before this litigation will be terminated.

ON MOTION FOR RECONSIDERATION

Plaintiffs' counsel have moved for reconsideration of our Order and Memorandum of November 17, 1977. For the reasons that follow, we decline to alter our earlier position, and the motion is denied.

Earlier we permitted these consolidated actions to proceed as a class action under Fed.R.Civ.Proc. 23(b)(3) seeking to recover pension benefits under collective bargaining agreements. Plaintiffs' counsel have submitted a proposed settlement and a petition for attorney's fees for court approval pursuant to Fed.R.Civ.Proc. 23(e). In our Memorandum of November 17, 1977, we declined to enforce the contingent fee agreements between plaintiffs' counsel and their clients as part of the settlement.[1] In lieu of the contingent fee agreements, we computed a fee in accordance with *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973) (*Lindy I*) and *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir. 1976) (*Lindy II*). We ordered that the *Lindy* fee be distributed assuming approval of the proposed settlement in the final chapter of these actions.[2]

Counsel for plaintiffs do not contest the court's authority to review contingent fee agreements. *See Magana v. Platzer Shipyard, Inc.,* 74 F.R.D. 61, 73–74 (S.D.Tex. 1977), *citing Developments in the Law—Class Actions,* 89 Harv.L.Rev., 1318, 1607 (1976). However, they argue that we exceeded the proper scope of inquiry in the manner in which we examined the contin-

In computing the fees, we have subtracted the hours that counsel have devoted in pursuit of their attorneys' fees. *Lindy II, supra* at 111. We do not think that the upsetting of the contingent fee agreements in this case on a different footing from that in *Lindy II.* Further, this case does not fall within any of the questions left open in *Lindy II. Id.* & n. 8.

1. Counsel have entered into 20% contingent fee agreements with 220 of the 305 class members. "Fixed fee" agreements were executed by 16 class members. The remaining 69 class members are unrepresented. Counsel for plaintiffs have argued that 20% should also establish the fee measure for the unrepresented class members. Counsel contend that any standard less than 20% would be unfair to those who entered into fee agreements. Since the contingent fee agreements have been rejected, we need not reach the issue of whether fairness requires unrepresented members to be charged the same fees as represented members. *See Illinois v. Harper & Row Publishers, Inc.,* 55 F.R.D. 221, 223–24 (N.D.Ill.1972).

2. Our computation of the fee also assumes that the settlement is accepted by all the class members who are unrepresented or who entered contingent fee agreements. If this assumption proves wrong and any class member chooses to opt out of the settlement, an adjustment to the settlement fund will be necessary. This would necessitate a similar adjustment to the fee computation.

gent fee agreements. Specifically, counsel state that we erred in considering the "vast discrepancy between the award counsel would receive under the fee agreements and the fee as computed under the standards" of the *Lindy* cases. *Dunn v. H. K. Porter Co.* and *Zecoski v. H. K. Porter Co.,* Nos. 76–1000 and 76–2105, at 4 (E.D.Pa., filed November 17, 1977). Counsel contend that the only two factors we should have considered were any overreaching in securing the agreements and the reasonableness of the percentage agreed upon between counsel and their clients. In support of their position, counsel for plaintiffs point to the *Manual for Complex Litigation* which provides: "The contingent fee contract is to be judged separate and apart from attorney's fees from the settlement or recovery fund and by the sole canon of reasonableness." *Manual for Complex Litigation,* § 1.47(b)(2) *Attorney's Fees under Contingent Fee Contracts,* reprinted in 1 *Moore's Federal Practice* Part 1 at 85.

■ Counsel's position overlooks two factors. First, we did apply the standard of reasonableness in evaluating the fee agreements. We stated: "Clearly we have the power to review the contingent fee agreements to assure their reasonableness in all respects." *Dunn v. H. K. Porter, supra* at 3; *see Magana v. Platzer, supra,* 74 F.R.D. at 77. The fee as computed under *Lindy* was simply one factor used to measure reasonableness. The use of the *Lindy* fee as one standard to evaluate the reasonableness of the contingent fee is not precluded by the Manual. Our earlier Memorandum does not state that the contingent fee agreement is unreasonable merely because it exceeds the *Lindy* fee. It should be clear that we are not requiring that the contingent fee be identical to a *Lindy* fee. This case might have been resolved differently had the con-

tingent fees only amounted to twice the *Lindy* fee. However, if the contingent fee agreement results in a fee three times that warranted by the *Lindy* factors, this discrepancy must be a substantial consideration in evaluating the reasonableness of the terms of the fee agreement.

■ Plaintiffs' argument also overlooks the unique position of the court in this context.[3] On the one hand, the court is entrusted with the special responsibility of protecting the class and supervising the settlement; on the other hand, the court proceeds *ex parte* without the benefit of the adversary process because it is not the duty of the defendant to contest the legal fees to be distributed from a common fund. *Prandini v. National Tea Co.,* 557 F.2d 1015, 1019 (3d Cir. 1977). As one court stated:

> This Court is fully aware that the attorneys' fees awarded does not meet counsel's full request . . . It must be remembered, however, that the Court alone is the protector of the interests of the absent claimants whose substantive interests are here at stake and who are unrepresented except by the very lawyers who are seeking compensation.

*Pollard v. United States,* 69 F.R.D. 646, 651 (M.D.Ala.1976). Also, it should be emphasized:

> Rule 23 F.R.Civ.P. "place[s] the court in the role of a third party to the compromise or guardian of the absent parties . . . The absence or silence of [class members] does not relieve the judge of his duty and, in fact, adds to his responsibility."

*Illinois v. Harpers & Row Publishers, Inc.,* 55 F.R.D. 221, 223 (N.D.Ill.1972), *quoting Norman v. McKee,* 290 F.Supp. 29, 32 (N.D. Cal.1968), *aff'd,* 431 F.2d 769 (9th Cir. 1970). To fulfill its special fiduciary responsibility as protector of the class members' interests,

---

**3.** We join in the comment of the *Kiser* court: The Court trusts that counsel will understand and accept that this is an unpleasant task for Courts, especially this one, for it has practiced law for so long in the vineyard before coming to the bench and recognizes the difficulties of maintaining a law office in these days of increasing costs and difficult issues.

*Kiser v. Miller,* 364 F.Supp. 1311, 1318 (D.D.C. 1973), *aff'd in part and remanded in part sub nom. Pete v. United Mine Workers of America Welfare & Retirement Fund,* 170 U.S.App.D.C. 437, 517 F.2d 1267 (1974); *see also Prandini v. National Tea Co.,* 557 F.2d 1015, 1020–21 (3d Cir. 1977).

the court should be permitted access to all reasonable standards to measure attorney's fees. Since the *Lindy* computation is the only objective device available to the court, its use should not be discouraged. Therefore, we conclude that we did not err in considering the *Lindy* fee in assessing the reasonableness of the fee agreements.

■ Plaintiffs' counsel also contend that use of the *Lindy* analysis in this context will encourage counsel to inflate their hours in an attempt to justify contingent fees. However, this contention fails to account for the weight placed upon the efficiency factor in the *Lindy* equation. *See Prandini v. National Tea Co., supra,* 557 F.2d at 1019–20. Once the lodestar is computed, the efficiency element may be used to increase or decrease the award. This factor is significant because our evaluation of the reasonableness of the agreements was based upon their relation to the total *Lindy* fee rather than just the "lodestar". Indeed, in this case, a substantial ingredient in computing counsel fees was the reasonably expeditious manner in which this case was pursued up until settlement. Any benefit that counsel might seek by inflating hours is offset by the weight accorded the efficiency factor. The same argument would also apply to the contingency factor. *Magana v. Platzer Shipyard, Inc., supra,* 74 F.R.D. at 75–76. Counsel might argue that the 20% fee in this case was necessary to justify the risk in undertaking this case. However, this element is fully recognized and considered in the *Lindy* computation. *Lindy II, supra,* 540 F.2d at 117.

■ It might be further argued that the contingent fee agreements are necessary to encourage counsel to undertake representation in cases such as this since counsel would desire to assure a certain rate of compensation if some recovery was secured. We do not doubt that fees are necessary to attract capable counsel and we do not intend to discourage representation in cases which involve some risk. *Manual for Complex Litigation, supra* at 78 and n. 127. On the other hand, reasonable fees, taking into account the contingent nature of the litigation, are all that are necessary to attract counsel.[4] While "windfall" fees would certainly draw counsel, the court must also consider the interests of the class members whose grievance generated the fund in the first instance. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 469–70 (2d Cir. 1974). At some point, the policy of attracting counsel by awarding fees encroaches upon the class members' right to recovery. Especially where the recovery is pension benefits, we cannot lose sight of the fact that it is the class members' fund and not the attorneys'. *See Kiser v. Miller,* 364 F.Supp. 1311, 1318 (D.D.C.1973), *aff'd in part and remanded in part sub nom. Pete v. United Mine Workers of America Welfare & Retirement Fund,* 517 F.2d 1267 (D.C.Cir. 1974). In this case, it should not be forgotten that although the contingent fees have not been enforced, counsel have been awarded more than $100,000 for approximately 800 hours of work. We think this fee sufficiently attractive to induce capable counsel to undertake representation in future cases similar to this.

In our earlier Memorandum, we placed substantial weight upon the *Kiser* court's recognition that contingent fee agreements in class actions must be scrutinized when

---

4. The competing considerations in this context have been aptly summarized as follows:

Whether acting under statutory grants of authority or common fund principles, or in response to bad faith, courts should design fee-setting criteria so as not to discourage attorneys from bringing class suits. Otherwise, the usefulness of the class action as a means to full realization of substantive policy would be jeopardized. In setting fees, courts should be aware of the possibility of using the fee award to create incentives for attorneys adequately to represent class interests.

On the other hand, courts should not award fees larger than the amounts which are required to fulfill this purpose. If attorneys collect more than the "reasonable value" of the services which have produced a benefit for class members, the reputation of the profession might suffer and the parties against whom fees are ultimately assessed—either the class members or the class opponent—might be unfairly burdened.

*Developments in the Law—Class Actions,* 89 Harv.L.Rev. 1318, 1611 (1976).

dealing with unsophisticated class members. *Dunn v. H. K. Porter, supra* at 3–4, *citing Kiser v. Miller, supra.* Counsel contends that the miners' impoverished status distinguishes the plaintiffs in *Kiser* from the hourly workers making up the class here. We do not agree that the scope of the *Kiser* decision is limited to one occupation. Counsel have not informed us of any material difference between the ability of the miners in *Kiser* and the plaintiffs here to make an informed decision about the reasonableness of a contingent fee in a class action. Therefore, we will hold to our reliance upon the *Kiser* case.

 In our earlier decision, we mentioned that sixteen of the class members had entered into "fixed fee" agreements with counsel. *Dunn v. H. K. Porter, supra* at 2. These agreements are actually a combination fixed fee and contingent arrangement since they obligated the client to pay $200 at the initiation of the suit and an additional $200 if the suit were successful. See Exhibit P–3. The question has arisen how to treat these agreements in computing the total fee discussed in the earlier Memorandum. Since these fees are at least partially contingent fees, our prior analysis applies to them. However, there exists a difference between these fees and the 20% fee. Since the $400 fee does not approach three times the *Lindy* fee computed in our earlier Memorandum we find it reasonable and therefore enforceable. We realize that this leads to a result by which those who paid $200 in the beginning with no guarantee of recovery end up paying more than those who took no risk by entering total contingent fee agreements. *See Lindy I, supra,* 487 F.2d at 168. However, each fee arrangement must be scrutinized separately. If one form of agreement is unreasonable, this does not render the alternative agreements excessive. *See Lindy II, supra,* 540 F.2d at 120 n. 14. Because the "fixed

fee" agreements are reasonable, we will enforce them in full.[5]

We must also consider the agreement between defendant and plaintiffs' counsel obligating the defendant to pay $50,000 directly to plaintiffs' counsel as part of the settlement. Agreements of this sort are not to be encouraged since they may "leave the unfortunate impression that defendants are buying themselves out of a lawsuit by direct compensation to plaintiffs' counsel". *Jamison v. Butcher & Sherrerd,* 68 F.R.D. 479, 484 (E.D.Pa.1975). However, we need not consider the validity of this aspect of the case since the reasonable fee we have computed exceeds $50,000. It would be an empty command to require the defendant to pay this sum into the fund only to have to withdraw it immediately to pay counsel fees. If the fee as we compute it is distributed upon approval of the settlement, the $50,000 may be paid in accordance with the agreement between defendant and counsel for plaintiffs. We do note that since the $50,000 constitutes a portion of the total settlement fund for the benefit of the class members, this payment should be credited to the total fee awarded to counsel. *Dunn v. H. K. Porter, supra* at 2 n. 3.

 Finally, we must modify footnote 4 of our earlier Memorandum to correct the hours logged by counsel. The new totals are as follows:

| | Rate | Hours | Total |
|---|---|---|---|
| Jerome E. Bogutz | $100 | 123.9 | $12,390.00 |
| Warren L. Soffian | $ 60 | 363.9 | $21,834.00 |
| Richard S. Hoffman | $ 60 | 242.95 | $14,557.00 |
| Alan Schnoll | $ 50 | 68.4 | $ 3,420.00 |

This modification results in a lodestar figure of $52,221.00. In accordance with the doubling discussion in our earlier Memorandum this computes to a total fee of $104,442.00 at this point. We find these hours, as modified, are reasonable, and we accept the breakdown of these hours which is contained in Exhibit "A" to the Supplemental Affidavit in Support of Counsel Fees.

**5.** Recognition of these 16 "fixed fee" agreements will necessitate reduction of the *Lindy* fee awarded to counsel. *See Lindy II, supra,* 540 F.2d at 119–20. Since these "fixed fee" agreements involve only about 5% of the class, the pro rata allocation will not result in a substantial reduction in the fee owed by any individual class member who must contribute to the *Lindy* fee. Therefore, we will postpone the final allocation of the *Lindy* fee until distribution of the fund following approval of the settlement.