OPINION OF THE COURT
ROSENN, Circuit Judge.
On this appeal, we are compelled to explore a matter of considerable sensitivity to the bar and delicacy to the bench — the authority of a district court to set aside private contingent fee agreements entered into between a member of the bar and various members of a class, properly certified pursuant to Fed.R.Civ.P. 23(b)(3). We conclude that the court has sufficient power to take this action, but because our examination of the record fails to disclose an adequate factual basis for the trial court’s decision to set aside the contracts, we vacate the judgment and remand for further proceedings.
I.
The genesis of this dispute lies in a collective bargaining agreement entered into between H. K. Porter 'Company, Inc. (“Porter”) and Local 63 of the United Rubber, Cork, Linoleum and Plastic Workers of America. The labor negotiations included a pension plan which came into existence in 1950 and covered employees of the company’s Quaker Division. It was amended several times, most recently in February of *1107 1969. After Porter decided to close the Quaker Division facility in September 1971, it gave notice of its intention to terminate the plan, effective February 23, 1973. Those who properly qualified continued receiving benefits until January 1976 when the company unilaterally ceased all payments. It claimed that it had no further obligations under the agreement because the trust fund established under it had been exhausted.
As a result, several employees contacted Richard Hoffmann, the attorney who had previously represented Local 63 in its negotiations with the company and who had represented several employees on an individual, private basis. Others sought help from Warren L. Soffian, who had secured pension benefits for approximately thirty members of Local 63. Both lawyers worked out fee arrangements with their clients. Hoffmann requested they pay a contingent fee of “20% of the amount recovered by settlement, trial or otherwise.” Soffian gave his clients a choice of either a similar 20% contingent fee or a flat payment of $400, half payable initially and half payable upon successful completion of the suit.[1]
Both attorneys filed complaints on behalf of their clients against Porter in the Eastern District of Pennsylvania in order to secure the benefits allegedly due. Hoffmann initiated a class action, Dunn et al. v. H. K. Porter Co. (D.C.Docket No. 76-1000), and Soffian brought a suit on behalf of several former employees, Zecoski et al. v. H. K. Porter Co. (D.C.Docket No. 76-2105). Following a conference with Judge Daniel H. Huyett, 3rd, the suits were consolidated and a single class action brought. The class was composed of all persons employed by Porter between January 1, 1951 and February 29, 1972, within the bargaining unit represented by Local 63 and who, during that period, became eligible for pension benefits under the collective bargaining agreement.[2]
On March 17,1977 the trial judge ordered counsel for plaintiffs to prepare and file applications for counsel fees which were to conform to the standards announced in Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp. [Lindy I], 487 F.2d 161 (3d Cir. 1973), and applied in Lindy II, 540 F.2d 102 (3d Cir. 1976). The court additionally ordered counsel to file a memorandum of law addressing its authority to set aside the fee agreements with class members and to award reasonable attorneys’ fees under Lindy I and Lindy II.[3]
A series of settlement meetings between the parties followed which culminated in a July 12, 1977 order that a conference be held to determine, inter alia, whether the proposed settlement was fair, reasonable, and adequate as well as to consider the award of counsel fees based on independent findings of fact. The court thereafter requested further affidavits concerning the settlement proposal. However, it modified its earlier statement with respect to counsel fees, indicating that further consideration of the matter would be deferred.
On September 19, 1977 the court again resumed consideration of the fee question. It concluded that the inquiry was then appropriate so that members of the subclasses, in assessing whether to object to the proposed settlement, would be able to base their decisions upon the net sum they ultimately would receive. Counsel submitted *1108 detailed affidavits in which they documented their services rendered during the litigation. Following oral argument, the district judge issued a November 17, 1977 Memorandum and Order in which he refused to enforce the contingent fee contracts and awarded fees in accordance with Lindy. Dunn v. H. K. Porter Co., 78 F.R.D. 41 (E.D.Pa. 1977).[4] Counsel moved for reconsideration and after further argument the court, in a second Memorandum and Order issued January 6, 1978, declined to alter its position. Id. at 46.
Notice was thereupon sent to all members of the class advising them that a hearing on the proposed settlement and counsel fee question would be held on February 9. They were also sent a form in which they could indicate to the court whether they desired to be included in the class, whether they approved of the settlement proposal, and whether they agreed to pay counsel fees pursuant to the contingent fee contracts they signed earlier. A considerable number of those responding stated that a 20% contingent fee of all sums paid by the company was too high.[5] Similar concerns were voiced at the February 9 hearing. The district court subsequently approved the settlement and awarded fees in accordance with Lindy I and II. Dunn v. H. K. Porter Co., 78 F.R.D. 50 (E.D.Pa. 1978).[6] The attorneys representing the class thereupon appealed to this court. Appellees, having no interest in this appeal, have not provided us with briefs, and neither have the claimants.
II.
Appellants argue in the first instance that the trial court, although having the authority to review the contingent fee contracts, can set them aside only if they are unreasonable on their face. This assertion misconceives the scope of the trial court’s power and duty to supervise those who practice before it as well as its obligation imposed under Fed.R.Civ.P. 23(e). ■
Because contingency fee agreements are of special concern to the courts and are not to be enforced on the same basis as are ordinary commercial contracts, Spilker v. Hankin, 88 U.S.App.D.C. 206, 210, 188 F.2d 35, 39 (1951), courts have the power to monitor such contracts either through rule-making or on an ad hoc basis. Canon 13 of the Canons of Professional Ethics, promulgated by the American Bar Association, recognizes that an attorney is free to enter into such arrangements. The Canon, however, qualifies the right with the proviso that they are subject to the “supervision of the courts, as to [their] reasonableness.” See Fitzgerald v. Freeman, 409 F.2d 427 (7th Cir.), cert. denied, 396 U.S. 875, 90 S.Ct. 151, 24 L.Ed.2d 134 (1969) (court not bound by contingent fee agreement executed in conjunction with substitution of new counsel and could, in light of Canons 13 and 34, award fees on quantum meruit basis). We indicated the source of the power in Schlesinger v. Teitelbaum, 475 F.2d 137, 141 (3d Cir.), cert. denied, 414 U.S. 1111, 94 S.Ct. *1109 840, 38 L.Ed.2d 738 (1973), where we stated that “in its supervisory power over the members of its bar, a court has jurisdiction of certain activities of [its] members, including the charges of contingent fees.”
Power flowing from this source has been exercised more frequently to protect those unable to bargain equally with their attorneys and who, as a result, are especially vulnerable to overreaching. Schlesinger v. Teitelbaum, supra, 475 F.2d at 140 (seamen); Cappel v. Adams, 434 F.2d 1278 (5th Cir. 1970) (children). However, it has also been exercised whenever a contingent fee agreement yields an unreasonable fee. In re Michaelson, 511 F.2d 882, 888 (9th Cir.), cert. denied, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975) (court has inherent power to examine amount charged by attorney in order to protect client from excessive fees); Farmington Dowell Products Co. v. Forster Manufacturing Co., 421 F.2d 61, 87 (1st Cir. 1969) (court has power to examine contingent fee contract in order to assure that it is not unwittingly an accessory to excessive fee). See also, Pitchford v. Pepi, Inc., 531 F.2d 92,110-11 (3d Cir. 1975), cert. denied, 426 U.S. 935, 96 S.Ct. 2649, 49 L.Ed.2d 387 (1976).
When a contingent fee contract is to be satisfied from a settlement fund approved by the trial judge pursuant to Fed.R.Civ.P. 23(e), the court has an even greater necessity to review the fee arrangement for this rule imposes upon it a responsibility to protect the interests of the class members from abuse. In such circumstances, the role of the attorneys is drastically altered; they then stand in essentially an adversarial relation to their clients who face a reduced award to the extent that counsel fees are maximized. Moreover, because of the nature of class representation, the clients may be poorly equipped to defend their interests against those of their attorneys. Class clients are frequently widely dispersed. Even those who have dealt directly with the class attorneys may have little direct knowledge of, or control over, the action. Many class action clients have not had prior experience in a lawyer-client relationship, and their financial stake in the action- will often be too small to encourage significant involvement between lawyer and client. Effective client opposition to an excessive fee is therefore unlikely. Obviously in this case the defendant had no obligation to contest the distribution of legal fees from the common fund, Haas v. Pittsburgh National Bank, 77 F.R.D. 382 (W.D.Pa. 1977),[7] nor is the court concerned with fees taxed against the defendant pursuant to statute in order to penalize it for violating the applicable law, Prandini v. National Tea Co., 557 F.2d 1015, 1020 (3d Cir. 1970). As a result, the only protection available to the class members in this case against the exposure to excessive fees was that afforded by the scrutiny of the district court. The district judge approved the final settlement and he was the ultimate protector of the claimants to the fund.
Although the district court made a specific finding that the agreements were obtained without any impropriety, and there is in reality very little empirical data suggesting a wide-spread abuse of the fee system, 7A Wright & Miller, Federal Practice and Procedure, § 18603 at 190 (1979 Supp.), such a potential nevertheless exists. When, for example, class action litigation decisions may impact differently on contractual fee and non-contractual fee members, an attorney may be tempted to mold his strategy so that the former receive larger awards than the latter, especially if there is some possibility that the court will award fees lower than those agreed to by contract. Developments in the Law — Class Actions, 89 Harv.L.Rev. 1318, 1610 (1976); Com *1110 ment, Computing Attorney’s Fees in Class Actions: Recent Judicial Guidelines, 16 B.C. Ind. & Com.L.Rev. 630, 642 (1975). Indeed, it is the potential for abuse which has caused the courts to vigorously examine fee allowances and thus respond to the criticism that. Rule 23 results in windfall fees for lawyers and little benefit to the actual claimants. City of Detroit v. Grinnell Corp., 495 F.2d 448, 468-69 (2d Cir. 1974); In re Equity Funding Corp. of America Securities Litigation, 438 F.Supp. 1303, 1325-26 (C.D.Cal.1977). “Where the only basis for a fee award is noncontractual, the court’s authority to determine the amount of the award to the class attorney is clear. Even where there is a fee contract, courts have the general power to override it, and set the amount of the fee.” Developments in the Law — Class Actions, 89 Harv.L.Rev. 1318, 1607 (1976). See also Manual for Complex Litigation § 1.47(b)(2) (1977, West Pub.Co.) Accordingly, the district court may properly inquire into the reasonableness of an attorney’s fee which, whether or not agreed to by contract, is to be satisfied through a settlement fund.
Further, this inquiry is not limited to an analysis of whether the fee contracts are reasonable on their face. Rather, the court looks to a variety of factors. In Kiser v. Miller, 364 F.Supp. 1311, 1319 (D.D.C. 1973), aff’d in part and remanded in part sub nom., Pete v. United Mine Workers of America Welfare and Retirement Fund, 170 U.S.App.D.C. 437, 517 F.2d 1267 (1974), the court set aside contingent fee agreements, noting that it was “not questioning the good faith of counsel . . . [but raising] a question of equity — whether the Court can, in good conscience, enforce a contract made with class members, who more likely than not, lack the sophistication, experience and education to act understandingly and deal with their attorneys on an equal basis at arms length.” Similarly, in Magana v. Plazter Shipyard, Inc., 74 F.R.D. 61, 73-76, 79 (S.D.Tex. 1977), the court indicated that contingent fee agreements in class litigation were not sacrosanct and that it would review the basis in fact for a proposed fee before authorizing the enforcement of such agreements. But see Philadelphia Electric Co. v. Anaconda American Brass Co., 47 F.R.D. 557, 559 (E.D.Pa. 1969) (claimants agreed to 25% fee but as they were “responsible government entities and substantial enterprises, for the most part represented by their own counsel,” court was reluctant to conclude they were unable to determine what constituted reasonable fee agreement).
Thus, we are constrained to disagree with appellants that the district court may determine the existence of a reasonable fee agreement by limiting its inquiry exclusively to a facial analysis of the contract. As the foregoing discussion suggests, the court must consider a number of critical factors, including the manner into which the contract was entered, the status and sophistication of the plaintiffs, whether the source of the fee payment is a settlement fund or a tax against the defendants, the size of the proposed award and whether the fee allowed is sufficient to encourage capable counsel to undertake such litigation in the future. Accordingly, we conclude that the district court in the instant case did indeed have the authority to look beyond the face of the contingent fee agreements and could set them aside for want of a proper factual showing.[8]
III.
Appellants next argue that even if the district court could look beyond the face of the fee agreements, it reached an incorrect conclusion on the facts. Specifically, they contend that the district court misapplied *1111 Lindy when it concluded the agreements would yield excessive fees. Further, they assert that it lacked any factual basis for the holding that the class members were unable to understand the implications of the fee agreements.
The district court concluded that by enforcing the contracts and imposing a 20% fee on the unrepresented class members, plaintiffs’ attorneys would receive “more than six times the lodestar and more than . three times the reasonable fee” as would have been computed under the Lindy formula. 78 F.R.D. at 45. Appellants contend that the district court’s comparison of the contractual fee to a fee to be computed under Lindy is not a valid benchmark for determining the reasonableness of the contingent fee. We agree.
Although the determination of reasonableness requires examination of factors beyond the four corners of the contingent fee contract, comparison with the Lindy fee is not one of them. If all of the other criteria to which we have alluded, see supra at 1110, suggest that the contract is reasonable, the proposed contingent fee is not ineluctably rendered unreasonable because it is several times greater than the Lindy fee. Such an approach does not adequately recognize the crucial distinctions between fees awarded under the Lindy standard and those payable under an express contract for services entered into prior to the litigation. First, and most important, in the former case, the court must engage in the highly sensitive task of designing and imposing an enforceable contract for services rendered upon litigants who never asked for, and never consented to, representation by the lawyers who now seek to collect fees from them. This is a job that equity courts have traditionally, and properly, approached with great caution. Moreover, in Lindy cases the gains which the lawyers seek a share of will often have been “bestowed upon the strangers as a byproduct of the performance by the lawyers of their duties to their own clients.” Dawson, Lawyers and Involuntary Clients in Public Interest Litigation, 88 Harv.L.Rev. 849, 929 (1975). Where that is the case, victorious class counsel may already have received substantial rewards for the successful prosecution of the litigation through fixed or contingent fee arrangements with consenting clients. For example, in Lindy the class attorneys who sought reimbursement from unrepresented class members received more than $850,000 pursuant to negotiated fee arrangements with class members. Lindy II, supra, 540 F.2d at 121. Where such fees have been paid, the award of further benefits is unsupported by the traditional policies of the law of restitution, since the attorney has lost nothing through his representation of the absent parties’ interest, and may well have profited thereby. Dawson, Lawyers and Involuntary Clients: Attorneys Fees From Funds, 87 Harv.L.Rev. 1597, 1605, 1652 (1974). Finally, to the extent that the attorney was contractually assured of such compensation prior to the undertaking of the litigation, the concern that an adequate incentive be provided to attorneys to take on meritorious causes is also satisfied. Id. For all of these reasons, the courts are properly concerned to keep tight rein upon the fees awarded under a Lindy arrangement.
Where, however, the lawyer and client have entered into a contractual fee agreement prior to the litigation, the considerations stressed above argue in favor of deference to the parties’ contractual arrangement. The strong judicial reluctance to enforce the terms of a judicially fashioned bargain upon the parties now presses in favor of honoring the express terms .of the fee agreement. The equities are also altered. If the client has entered the contract freely and advisedly, his claim of unfairness is reduced in force. The risk of unfairness to the attorney, in contrast, is sharply increased. For it cannot be said that the attorney is receiving more than he bargained for at the outset of litigation. He may well have relied upon the fee contracts in deciding to undertake the litigation at the outset. Unduly close review of the allocation of risks in a contract entered into before the outcome of the litigation *1112 was known or knowable might also discourage the prosecution of risky, but meritorious lawsuits. We therefore believe that the courts should be loathe to intrude into a contractual relationship between an attorney and client, and that a comparison between the contractual fee and the Lindy fee, whose method of calculation is designed to meet very different needs, is an inappropriate ground for invalidation of a contingent fee arrangement. Indeed, to allow such a comparison to be the sole basis for voiding an otherwise legitimate contract would require invalidating contingent fee contracts as per se unreasonable whenever damage awards reach large amounts. This, we believe, would be inconsistent with the Canons of Ethics and relevant case law.
The district court also considered other factors which the appellants find objectionable. Apparently, the district court concluded that because pension funds were intertwined with the fee award, special attention was required. It stated that, “[e]specially where the recovery is pension benefits, we cannot lose sight of the fact that it is the class members’ fund and not the attorneys’.” 78 F.R.D. at 48. Moreover, it also noted that the fee award would not be taxed against the defendants, whose obligations extended only to paying a fixed amount. Id. at 43. In light of our earlier discussion, we cannot declare that consideration of such factors was impermissible.[9] Nor can we say that the court’s conclusion was arbitrary and capricious.[10]
However, in looking beyond the literal language of the fee contract, the district court also placed substantial reliance on counsel’s failure to demonstrate that the class members “possessed sufficient sophistication to negotiate with [their attorneys],” and that they consulted independent counsel on the matter of fees. 78 F.R.D. at 44. Thus, apparently the district court assumed that the plaintiffs were not able to fully appreciate the implications of the fee agreement and, unless their counsel demonstrated otherwise, the contract would not be enforced. Id. at 41. In so doing, the court asserted there was no “material difference between the ability of the miners in [Kiser v. Miller, supra] and the plaintiffs here to make an informed decision about the reasonableness of a contingent fee.” Id. at 49.
In view of the state of the record, we are unable to agree. The district court made findings initially that the plaintiffs were hourly workers. However, this finding alone does not place them in the same category as those in Kiser. In that case, plaintiffs entered into contingent fee contracts after it became clear their suit would be reasonably successful. As a result, there was a documented sequence of events suggesting either overreaching by the attorney or the plaintiffs’ inability to grasp the implication of the contracts. In the instant case, however, the contracts were entered into prior to the institution of suit, and apparently with considerable preliminary discussion. Moreover, a substantial percentage of class members were apparently allowed to choose between a fixed fee and a contingent fee arrangement. The district court expressly found there was no misconduct on the part of the lawyers. 78 F.R.D. at 44. Further, there is evidence in the record indicating that at least one plaintiff involved in the suit had union negotiating *1113 experience. (Deposition of Elmer F. Heier at 7). Accordingly, the mere finding that plaintiffs were hourly workers does not provide a sufficient basis for the district court’s decision.
There are some indications in the record, however, that warrant further inquiry by the district court as to the presence of an adequate basis for its decision to set aside the contractual agreement. We note that two arguments were held to discuss the fee issue.[11] However, they were not transcribed. As a result, it is impossible for us to know what other facts, if any, supported the district court’s decision. We conclude that we must remand this case to the district court for an opportunity to make necessary findings to justify its conclusion.[12] We note that the class members are for all practical purposes unrepresented before the district court on the attorneys’ fee issue. In conducting its inquiry, the district judge may therefore properly place upon the class attorneys the burden of showing by a preponderance of the evidence that the contracts were entered into advisedly, and without overreaching, and that the fee awarded is reasonable under the circumstances. It should, if necessary, allow the attorneys an opportunity to supplement the record on those issues.
IV.
Finally, appellants contend that if the contingent fee contracts are ultimately enforced, then the 20% fee should be applied to the unrepresented members of the class, i. e., the sixty-nine members who did not sign any contract for legal representation. The rule for applying Lindy guidelines to unrepresented members of a class when the class is composed of both represented and unrepresented members is as follows:
After determining the total reasonable value of an attorney’s services in securing recovery of a fund for the class, the district court must determine what portion of the amount arrived at should be paid by the unrepresented claimants. Absent extraordinary circumstances, the unrepresented claimants should pay for the attorneys’ services in proportion to their benefit from them —that is, the unrepresented claimants should pay a percentage of the reasonable value of the attorneys’ services to the class equal to their percentage of the class’ recovery.
Lindy I, supra, 487 F.2d at 169 (emphasis added).
The appellants contend that the extraordinary circumstances referred to above are present in this case. They believe that the extraordinary circumstances are that the overwhelming majority of the members of the class (75%) entered into a reasonable fee arrangement that should be applied to the unrepresented members. We are not convinced that standing alone the mere concurrence by a majority of the members of the class in a written fee arrangement constitutes such an extraordinary circumstance.
Appellants also contend that an “unreasonably unjust result would be achieved” if *1114 the “passive members” of the class were “allowed to receive a benefit from their inactivity.” This justification was rejected by the court in Lindy II, 540 F.2d at 119-20. Furthermore, the result sought would lead to a windfall gain to the attorneys. Any “inequity” in the responsibility for counsel fees should fall on those who contracted to bear that responsibility. Thus, we conclude that regardless of the disposition of the contingency fee contracts, on remand the district court should determine the fees owed by unrepresented members of the class under the Lindy guidelines.
V.
In light of the foregoing, we hold that the district court, both in its supervisory authority over those practicing before it and as part of its duties imposed by Fed.R.Civ.P. 23(e), does have the authority sua sponte to set aside contingent fee agreements when it concludes they would yield unreasonable fees. Further, in determining the reasonableness of the fee, it is not limited to examining the agreements on their face. We also conclude, however, the district court must have a substantial factual basis before it makes its determination. The record before us now is not sufficiently complete to permit adequate appellate review of the district court’s action. We therefore vacate the judgment of the district court and remand the case for further proceedings not inconsistent with this opinion.
Costs taxed against the settlement fund.

. Sixteen class members entered into enforceable fixed fee agreements. No dispute is raised on this appeal as to such contracts. The record also reveals that 220 of the 305 class members signed the contingent fee agreements and that the remaining 69 class members were unrepresented.

. Subclasses were also approved, a description of which is irrelevant to this appeal.

. The district court estimated that the total value of the settlement was $1,423,430 so that if the 20% fee were applied to all class members, counsel would receive $284,687.60. Dunn v. H. K. Porter Co., 78 F.R.D. 41, 44 (E.D.Pa. 1977). Appellants argue that the contingent fee amounts to only 16% of the settlement because Porter agreed to pay the attorneys $50,000 of the plaintiffs’ legal fees. Judge Huyett properly rejected this contention, noting that “there is, ‘in reality, only one fund for both the class and the attorneys’ fees.’ ” Id. at 44 n.3, quoting from Prandini v. National Tea Co., 557 F.2d 1015, 1020 (3d Cir. 1977).

. There is nothing in the record indicating that at this time any class members, whether represented or not, had objected to the contracts. Thus, the trial court apparently took its action sua sponte.

. Plaintiffs counsel submitted the following tallied responses to the district court:

Included Object to Object to Number in Number of

Fee Agreement/Fee Subclass Class Responses Excluded
12 — Pre ’69 41 12
57 2 Post ’69 160 67 1
1 2 Deferred 105 35 25

. Applying the Lindy methodology, the district court first approved of the hourly rates and hours expended on the litigation to determine the lodestar. It then examined the contingency and quality factors and determined that doubling the lodestar was appropriate. Dunn v. H. K. Porter Co., 78 F.R.D. 41, 45-46 (E.D.Pa. 1977). Judge Huyett ultimately awarded $113,-084.20. Dunn v. H. K. Porter Co., 78 F.R.D. 50, 54 (E.D.Pa. 1978).

. In Haas, the district judge appointed a guardian ad litem to represent the interest of the class members insofar as attorney’s fees are concerned. He stated: “The dilemma [resulting from defendant’s lack of interest in the issue] thereby created for the Court finds the judge playing ‘devil’s advocate’ on behalf of the disinterested defendants, while at the same time attempting to exercise his impartiality in making a just determination of reasonable fees. To require the judge to occupy an adversary position during the fee proceedings is highly inconsistent with his acknowledged duty to act as an impartial arbitrator.” 77 F.R.D. at 383.

. Because we hold that the district court may engage in this examination, the question arises whether it should apply federal or state law. We conclude that it should apply federal law for its action is part and parcel of the process a federal court follows both in supervising members of its bar and in meeting the obligations imposed on it by Fed.R.Civ.P. 23(e). See Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); Edler v. Metropolitan Freight Carriers, Inc., 543 F.2d 513, 519 (3d Cir. 1976); Wright, Law of Federal Courts, § 59 at 275-76 (3d ed. 1976).

. Indeed, when a class action is brought pursuant to the antitrust laws, a successful plaintiff may recover treble damages and costs, including attorney’s fees. § 4 of the Clayton Act, 15 U.S.C.A. § 15 (West 1973). The purpose of this provision is not only to compensate plaintiffs for their injuries, but also to encourage vigor- . ous private enforcement of those statutes as well as to deprive those who violate them of any wrongfully obtained profits. Thus, a settlement fund created under § 4 will often reflect substantially more than damages. See, e.g., Pfizer, Inc. v. Government of India, 434 U.S. 308, 314-15, 98 S.Ct. 584, 54 L.Ed.2d 563 (1977). As a result, what might constitute a reasonable fee in that type of case is not necessarily suitable here, where fees are deducted directly from plaintiffs’ pension benefits.

. Fee awards are a matter within the district court’s discretion. Because we have concluded the court had the authority to exercise this discretion, we review its decision only to determine if it constituted an abuse of such power. Prandini v. National Tea Company, supra, 557 F.2d at 1018.

. Our examination of the district court proceedings reveals that on October 21, 1977 argument was heard on petition for counsel fees in which both plaintiff and defendant argued. A second hearing was held on December 12, 1977, in which plaintiff presented argument. Both sessions were apparently not for the purposes of presenting evidence on the issue.

. The problem apparently encountered by the district court in this case is that a fee contract was entered into with 220 separate claimants, substantially increasing the total recovery and, correspondingly escalating the attorneys’ fees without a proportionate increase in the effort and expense of litigation. A fair and equitable contingent fee agreement generally' provides for a sliding scale in which fees based on a percentage of the total recovery decrease as the amount of the recovery increases. See Pollard v. United States, 69 F.R.D. 646, 649 (M.D.Ala. 1976); Milstein v. Werner, 58 F.R.D. 544, 551-52 (S.D.N.Y. 1972); State of Illinois v. Harper & Row Publishers, Inc., 55 F.R.D. 221, 223 (N.D.lll. 1972). The fee contracts in the instant case had no such formula and it may well be that an appropriate modification of the contracts could be a satisfactory solution to the conundrum posed here.