**Slimp KISER, on behalf of himself and all other similarly situated plaintiffs, Plaintiff,**

**v.**

**Arnold R. MILLER et al., Defendants.**

**Edwin Wallace MOORE, Plaintiff,**

**and**

**James L. Walker and Estill Smith, Intervening Plaintiffs,**

**v.**

**UNITED MINE WORKERS OF AMERICA WELFARE AND RETIREMENT FUND OF 1950 et al., Defendants.**

**Civ. A. Nos. 2599–70, 2088–71.**

United States District Court, District of Columbia.

Aug. 29, 1973.

Daniel L. O'Connor, J. Michael Farrell, Washington, D. C., for the Class in Civil Action No. 2599–70.

Julian H. Singman, Washington D. C., for intervenors-plaintiffs in Civil Action No. 2599–70.

Louis Rabil, Washington, D. C., for plaintiff and intervenors-plaintiffs in Civil Action No. 2088–71.

Harold H. Bacon, Joseph A. Rafferty, Jr., Washington, D. C., for defendants.

Joseph A. Yablonski, Lewis D. Sargentich, Clarice R. Feldman, Daniel B. Edelman, Washington, D. C., for amicus curiae, the United Mine Workers of America.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This case is before this Court on remand from the Court of Appeals for the District of Columbia, to determine the question of appropriate counsel fees to be awarded to the attorneys for the *Kiser* class and the attorneys for the two

groups of intervenors, the *Adkins* group and the *Moore* group.

The matter of counsel fees is a subject of great controversy, with the eye of storm fixed on the standards by which the fee is regulated and set. No standard can be applied in a vacuum. Therefore, before turning to the merits of the award, the Court believes it will be helpful to establish a framework of facts and events which produced the posture of this case.

## I. HISTORY OF LITIGATION

This case commenced as a personal suit by Slimp Kiser, a Kentucky coal miner, against the former Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950. The original complaint was later amended to include all miners who had retired after February 1, 1965 and who had been denied pension benefits because they did not meet the last signatory employment requirement which the defendant trustees enacted in Resolution No. 63 on January 4, 1965. The Court determined that a valid class existed by Order entered August 6, 1971 which was later amended on January 4, 1972. The *Kiser* suit was consolidated with the suit of Edwin Moore, James Walker, and Estill Smith versus the defendant Fund (C.A. 2088–71). And subsequently Messrs. Milford Adkins, James Hensley and Albert Madden were granted leave to intervene in the consolidated action.

The suit sought to compel the Defendants to pay the Plaintiffs their pensions. The defendants had denied the Plaintiffs' pension applications on the ground that they had not worked in the coal industry as an employee of an operator signatory to the National Bituminous Coal Wage Agreement of 1950 for at least one full year immediately prior to permanent retirement. In a Memorandum Opinion of January 19, 1973 this Court held that the last signatory employment requirement was invalid as a basis upon which to deny the Plaintiffs their pensions. *See,* Memorandum Opinion of January 19, 1973, 353 F.Supp. 736, et seq., for a complete discussion of the issues and the Court's decision.

The defendant trustees moved for reconsideration of this Court's January 19 decision. Upon reconsideration, the Court entered a Supplemental Opinion and Order on February 6, 1973 which reaffirmed the Court's decision with respect to the invalidity of the last signatory employment requirement. However, the Court did amend its original order by deleting the requirement that the trustees pay interest at 6% per annum on the total amount of the accrued pension, and further provided that the payment of accrued pensions should be from the first day of the month following the date of denial rather than from the actual date of denial.

The Defendants appealed. On July 23, 1973 the United States Court of Appeals for the District of Columbia Circuit entered an order authorizing this Court to rule on Plaintiff-Appellees' request for counsel fees and further directed that ". . . (2) the appellant Fund is directed forthwith to pay to those members of the plaintiff class who have been entered upon the pensions rolls of the Fund as a result of this Court's Order of May 24, 1973 an amount equal to two-thirds of the total amount due said pensions; (3) the appellant Fund is directed to place the remaining one-third of the amount due members of the plaintiff class who have been placed on the pension rolls into an interest bearing account with a recognized banking institution in the District of Columbia until further order of this court or final disposition of this appeal on the merits; . . . ."

In view of the foregoing, the Court undertook an in-depth consideration of the matter of appropriate attorney's fees. All counsel presented requests that the defendant fund pay their attorney's fees. They each also presented various contingent fee agreements.

The *Moore* counsel requested $23,000 in fees plus $891.32 in costs and expenses from the Fund. They showed 130 hours spent on the case. In the alternative, they informed the Court that counsel fees would be provided by the contingent fee agreements between themselves and their three clients. Under the agreement Mr. Moore would pay 35% of his total recovery ($8,400) and Messrs. Smith and Walker would pay 25% of their respective total recoveries ($6,500 each).

Counsel for the *Adkins* group petitioned for $14,485.83 in fees and $97.26 in costs to be taxed to the Defendants. Alternatively, they requested that the Court honor their contingent fee agreements which sought a percentage of only the accrued (past) pension benefits rather than out of future benefits. The agreements provided for a flat fee of $1,500 from each client out of their accrued pensions plus 33⅓% of the accrued pension over $1,500 from Mr. Adkins ($2,400) and 50% of the accrued pension over $1,500 from Messrs. Madden and Hensley. The *Adkins* group's attorney expended 286 hours on the case, according to their counsel's affidavit.

The *Kiser* attorneys also had a contingent fee agreement with the original Plaintiff, Mr. Kiser, for one-third of his accrued pension. As partial compensation for the 2,065 hours logged as class counsel, the *Kiser* attorneys seek 33⅓% of each class miner's accrued pension to be deducted from the total recovery of accrued benefits plus 10% of each miner's future pension and benefits ($1,600,000) to be paid by the Fund from general revenues over the next ten years. Counsel has informed the Court that 401 miners have signed a "fee agreement" consenting to this contingent fee formula.

The "consents" to *Kiser* attorneys fees has caused some confusion in the record. The consent forms were mailed to the members of the class on January 22, 1973, several days after the judgment was entered in this case and the Court informed counsel that it would determine the question of attorneys fees. The form was attached to a covering letter describing the successful judgment. In the last paragraphs of the three-page letter, counsel informed class members of the fee formula and urged the members to sign the agreement.

It is alleged that shortly after the original Opinion of the Court on January 19, counsel for all parties met with the Court in Chambers, and it is further alleged that the letter was discussed. The Court does not recall such discussion as to any contingent fees, etc. and neither do the attorneys for the Defendant Fund. The record discloses that one day after that meeting, the *Kiser* petitioners mailed the letter with the proposed fee agreement to the class members. When the fact of this letter came to the Court's attention, the matter was promptly set down for a hearing on February 15, 1973; and while the transcript will speak for itself, *Kiser* petitioners did not dispute at any place therein the following:

(a) the Court did not countenance a contingent fee agreement of the kind contemplated by Kiser's attorneys in this particular case; and

(b) the Court wanted a new notice sent out to all members of the class; and

(c) counsel were directed to submit an order for a new notice to the Court for its approval with an opportunity on the part of the defendants to object.

Counsel for Defendant Trustees did not submit the Order requested, and none was entered. In any event, and in order to set the record straight, this Court at no time ever approved a contingent contract in the manner set forth in the aforementioned letter sent out by the *Kiser* attorneys to the class members.

## II. THE CLASS ACTION STANDARD OF REASONABLE ATTORNEY'S FEES MUST CONSIDER TIME, EFFORT, SKILL, COMPLEXITY, RISK, RESULTS, INCENTIVE, AND PUBLIC SERVICE IN LIGHT OF THE ATTORNEY–CLASS RELATIONSHIP, AND NOT SOLELY A FLAT PERCENTAGE

The facts of this case exemplify the inherent controversy and problems attendant with the question of counsel fees in class actions. The fundamental concern has been that the attributes of the class action—speed and efficiency in the administration of justice—will be obliterated if certain factors are left uncontrolled. The potential for abuse lies in the area of unreasonable charges for attorney fees and improper solicitation of such fees from actual or potential class members. As a preventive measure for such abuses, it has been strongly recommended that the matter of attorney's fees be left to the determination of the Court using a standard applicable to the unique situation of a class action. § 1.41 "Preventing Potential Abuse of Class Action," Manual for Complex Litigation, 1 Moore's Federal Practice Part I at 27–28 (1973).

The standard used to determine class action attorney's fees must meet the problem on two levels. On the first level, it must weigh the following factors: (1) time and effort expended; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the amount of duplication of other counsel's work; (5) the amount of risk involved; and (6) the nature and amount of the results obtained.[1]

On the second level, the standard must include three considerations unique to the class action. They are: (1) *The Attorney-client Relationship*—The representation of the class is not the result of private enterprise but the result of judicial determination; (2) *Public Service Element*—an element of public service is involved in seeking and accepting employment as counsel for the class; and (3) *Incentive Factor*—the policy of the law in class actions is to provide a motive to private counsel to represent the public and enforce the law. *See*, § 1.47 "Control of Attorneys Fees and Expenses in Class Actions," Manual for Complex Litigation, *supra* at 62–64.

These class action standards in the preceding paragraph incorporate several of the factors used to judge the reasonableness of the fee charged for services to an individual client, but consider them in a different perspective. As the form, nature and substance of the relationship between the class members and class counsel are different from those which characterize the relationship between counsel and an individual party capable of contracting for the payment of attorney's fees, so also is the standard measuring the attorney's fees different.

The question of appropriate counsel fees has been tied to apron strings of the contingent fee percentage for too long. In saying this, the Court is not unmindful that contingent fees in many instances, as a practical matter, have a long tradition in the legal profession, and have served and will serve a useful public purpose. However, in class actions, under Rule 23, it is incumbent upon the bar and bench to apply their imagination to a solution for this pressing problem. As Judge Decker in Illinois v. Harper & Row Publishers, 55 F. R.D. 221 (N.D.Ill.1972) has warned:

" . . . If Rule 23 is to be preserved against deserved criticism, some attempt must be made by the court to suit the award of fees to the performance of individual counsel in light of the size of the settlement. Otherwise, the attorneys who are taking advantage of class actions to obtain lucrative fees will find themselves vulnerable to the criticism expressed

---

1. See also, Code of Professional Responsibility, § DR 2–106.

in the Italian proverb, 'A lawsuit is a fruit tree planted in a lawyer's garden.' " at 224.

Thus, while a fee awarded in a class action suit might reflect a percentage of the total recovery, this selected percentage cannot be the primary determinate. After counsel has been adequately compensated, including a premium to provide a motive for class representation, no further incentive is needed. Therefore, though the amount recovered bears consideration, the primary focus should be upon the time and effort expended, the skill needed (papers which are merely repetitive work of others count for little), the risk involved, the nature of the benefits recovered and the effect of the award on the public interest and reputation of the courts. § 1.47 Manual on Complex Litigation, supra, at 64. As the Manual goes on to state succinctly:

> "In no event should representation of a judicially determined class be allowed on the same basis as in a contingent fee contract between competent contracting counsel and client."
> *Id.*, at 64.

To justify the contingent fee percentage in class actions on the grounds that the recovery is a "windfall" to the class, and, therefore, there should be a "windfall" award to the attorney is without logical merit. The initial premise is faulty, i. e., to say that the recovery, when prorated to its sub-subsistence sum of $1,800 per year, is windfall, is to disregard today's economic realities. Furthermore, the second premise implies a selfishness unbecoming to the legal profession. This thinking is all the more unacceptable when one remembers that the purpose of the suit was to restore the rights of a deprived class. In such circumstances, a sizable diversion of the recovery for attorney's fees would merely constitute a substitution of one fiduciary wrongdoer with another.

## III. THE FOREGOING STANDARD MUST BE APPLIED TO THE INDIVIDUAL FACTS OF EACH CASE

■ There are certain facts in this case which are relevant to the application of the class action standard in this case. They are as follows:

(1) This case was decided on a question of law in a Motion for Summary Judgment; and

(2) The principle issue in the case was not novel, having been determined in a number of earlier suits; [2] and

(3) Nor was the issue involved complex. The defendants basically contested only the required period of signatory service at oral argument. The Petitioners filed a three-page memorandum of points and authorities citing only two key cases: *Roark II* and *DePaoli, supra*; and

(4) Kiser counsel logged approximately 2,065 hours on the case since its inception in 1969 on behalf of the original plaintiff, Mr. Kiser. The diaries of counsel show little time was necessary for legal research. The papers filed are brief relying primarily on the logic of the facts in this case. In fact, nearly one-half of the bulk of the papers filed

---

2. e. g., Roark v. Lewis, 130 U.S.App.D.C. 360, 401 F.2d 425 (1968) (*Roark I*); Roark v. Boyle, 141 U.S.App.D.C. 390, 439 F.2d 497 (1970) (*Roark II*); DePaoli v. Boyle, 144 U.S.App.D.C. 364, 447 F.2d 334 (1971); Teston v. Carey, 150 U.S.App.D.C. 256, 464 F.2d 765 (1972); Belcher v. Carey, C.A. 71–1622 (decided January 28, 1972 D.C.Cir.); Pete v. UMW Welfare and Retirement Fund of 1950, D.C., 352 F.Supp. 1294 and Blankenship v. UMW Welfare and Retirement Fund of 1950, C.A. 2186–69 and 2350–69 (settled January 1973).

The *Blankenship* case presents a noteworthy comparison to this case, though the questions and matters involved were more complex. The total recovery in *Blankenship* is estimated at $300,000,000.00. The class size involved possibly 20,000 miners (this case involves only 300 to 600). To obtain the recovery 15 lawyers worked over 14,000 hours, taking 25 depositions, conducting two trials, and contesting many, not one, regulation. In determining the award of counsel fees, Judge Gesell divided the case into three phases. He awarded $825,000 in fees for the first two phases and obtained an agreement that fees in the final phase would not exceed $200,000.

in this case pertain to the question of attorney's fees. In addition, no discovery or litigation was necessary in the case; and

(5) The total amount of recovery is still debatable as the actual number of miners in the class has not been re-solved. *Kiser* counsel claim there are 666 members of the class and defendants claim 356 are validly enrolled as of August 10, 1973. Thus 310 miners or their estates are still in dispute. Accordingly, minimum and maximum benefits to the Kiser class are as follows:

| | | | |
|---|---|---|---|
| 1(a) | Maximum retroactive benefits (666 miners) | | $2,797,200.00 |
| 1(b) | Minimum retroactive benefits (356 miners) | | 1,485,200.00 |
| 2(a) | Maximum prospective pensions | | 11,812,642.00 |
| 2(b) | Minimum prospective pensions | | 6,314,372.00 |
| 3(a) | Maximum welfare benefits | | 1,301,364.00 |
| 3(b) | Minimum welfare benefits | | 695,624.00 |
| | (666 miners maximum) | TOTAL | $15,911,206.00 |
| | (356 miners minimum) | TOTAL | 8,495,193 [3] |

Thus the total recovery for the *Kiser* class lies somewhere between these two figures; and

(6) The work remaining in the case consists of the argument in the Court of Appeals (briefs already filed) and the resolution of the minor dispute as to whether the 310 miners or their estates are valid members of the class. In this regard the United Mine Workers of America and the Defendant Trustees were ordered on August 1, 1973 to go into the field and assist these people in the preparation and filing of applications to determine whether they were valid members of this class and thus entitled to the benefits (Tr. 51–52). This directive eliminates the need for extended future services on the part of counsel.

## IV. IN DETERMINING ATTORNEY FEES FOR THE CLASS THE COURT APPLIED THE CLASS ACTION STANDARD AND IS NOT BOUND BY THE CONTINGENT FEE AGREEMENTS WHICH ARE VOID AS AGAINST PUBLIC POLICY

In light of the Class Action Standard, the contingent fee agreement which the *Kiser* attorneys urge this Court to adopt would not be a true reflection of a reasonable fee in this suit. To determine an equitable award which includes an incentive for future class actions requires

---

3. These figures are based on the table of estimated individual benefits set out at page 7 of the Kiser attorney's Supplemental Memorandum in Support of Motion for Partial Allowance of Attorney Fees, filed August 6, 1973. We have set out the table below. Counsel determined the amount of total recovery based on 290 miners.

| | Individual Benefit | Requested % | Fee Amt. | Total Recovery for 290 Members |
|---|---|---|---|---|
| Retroactive Pension benefit | $ 4,200 | 33⅓% | $1,400 | (290 × Indiv. benefits) $1,218,000.00 |
| Benefits from Jan. 1–July 31, 1973 | 1,050 | 10% | 105 | 304,500.00 |
| Funding for future benefits | 17,737 | 10% | 1,773 | 5,143,730.00 |
| Welfare benefits | 1,954 | 10% | 195 | 566,660.00 |
| Total | $24,941 | 13.9% | $3,473 | $7,232,890.00 |

a delicate balance of all the factors set out above. The Court trusts that counsel will understand and accept that this is an unpleasant task for Courts, especially this one, for it has practiced law for so long in the vineyard before coming to the bench and recognizes the difficulties of maintaining a law office in these days of increasing costs and difficult issues.

■■ This Court finds, on the facts presented in this case, that an hourly rate of $40 [4] provides more than adequate compensation. The Court has taken the number of hours logged discounted them by 35% to compensate for the numerous telephone calls and conferences among attorneys, the time spent on the attorney fee question, and the discrepancies among the lawyers as to the time spent in court on hearings of various motions. The fee for the hourly compensation is $53,680.00. As a premium, for the class representation, the Court has added an amount equal to 10% of the hourly computation,[5] giving the total amount of $59,048. For any future services, that might be rendered, the Court awards an additional $3,000.[6] Thus the total award equals $62,048.

The Court has made its determination based on the following reasons:

(1) The issues were neither novel or complex. The case required no pretrial discovery. Decisions in other suits allowed this case to be adjudicated on a Motion of Summary Judgment with a three-page memorandum of points and authorities citing only two cases. A large bulk of time and papers was spent on the attorney's fee question. Outside of the papers filed in the fee's question, neither the papers filed or the time logs show many hours on legal research; and

(2) There was relatively little risk involved in the case in light of the earlier decisions and the settlement of the *Blankenship* case; and

(3) The principal benefit that the members of this suit obtained that they would not have received as members of the *Blankenship* class was approximately $2,400 more in retroactive benefits. Therefore, it is the $2,400 times the number of members in the class which should be viewed as the actual recovery in the case; and

(4) As both attorneys recognized, this suit involves a significant element of public service. In fact, the *Kiser* counsel have stated that they undertook the suit in the spirit of humanitarianism; and

(5) The Court determined this to be a class action, thus the Court established counsel's relationship to the class; and

(6) The nature of the recovery was compensation for denied pension and welfare benefits. Private counsel should not benefit in the same manner as if this were a personal injury action or an action against a corporate giant involving an antitrust claim; and

(7) Members of the class are well-known to be the most underprivileged and impoverished group in the nation. The meager benefit of $1,800 per year, for which they have literally given their lives, must have the Court's protection from large claims by attorneys; and

■ (8) This Court is not bound by the contingent fee consents that *Kiser* counsel has with 401 members of the

---

4. The hourly fee in *Blankenship* was $45 per hour before taking into account the premium of $200,000. It goes without saying that the issues involved in *Blankenship* were more complex and novel than those in *Kiser*, not to mention the fact that *Blankenship* involved pre-trial discovery, two trials, a recovery of $300,000,000 for approximately 20,000 pensioners. See also the $35 per hour fee in a suit against a union for breach of fiduciary duty, Bakery & Confectionery Workers International v. Ratner, 118 U.S.

App.D.C. 269, 335 F.2d 691 (1964) at n. 3, 693.

5. This is the same percentage which Judge Gesell used in *Blankenship*.

6. As was noted *supra*, the Court does not anticipate the need for any substantial future services, in light of the Union and Fund's compliance with the Court's directive to use the Union's field representatives to personally contact the class members and assist them to become enrolled.

class. Contracts made by persons in a fiduciary relationship with the other party are always subject to close judicial scrutiny and are treated as presumptively voidable. E. g., Spilker v. Hankin, 88 U.S.App.D.C. 206, 188 F.2d 35 (1951); Udall v. Littell, 125 U.S.App.D.C. 89, 97, 366 F.2d 668, 676 (1966). This rule is founded on public policy and operates, independently of any actual fraud, to prevent fraud. The Court in *Spilker* specifically declared that the fact that the contract was in writing would not thwart the policy, and in fact, the Court would enforce the policy all the more strenuously where the contract beneficial to the attorney had been executed long *after* the attorney-client relationship had commenced.

Such are the circumstances in this case. The Court is not questioning the good faith of counsel. It does raise a question of equity—whether the Court can, in good conscience, enforce a contract made with class members, who more likely than not, lack the sophistication, experience and education to act understandingly and deal with their attorneys on an equal basis at arms length. There is no showing that the class had the assistance of independent counsel when agreeing to the fee; the consents were obtained from retired miners whose relationship to counsel was the result of judicial determination; the consents were obtained after counsel knew the outcome of the case; and the *amounts of the contingent fee contracts are excessive in light of the actual legal services necessary to succeed in this public interest suit.*

■■ *It is ingrained in the policy of determining reasonable attorney's fees,* that an attorney is entitled to no more than a reasonable fee, no matter what fee is specified in the contract, because an attorney, as a fiduciary, cannot bind his client to pay a greater compensation

for his services than the attorney would have the right to demand if no contract had been made. Therefore, the Court finds the consents, for whatever binding value they may have, to be null and void as against public policy.

Considering the background and facts of this case, as well as the actual effort needed to win, the amount awarded to class counsel not only provides adequate compensation on an hourly basis but also includes a sufficient incentive for the work done.

V. THE INTERVENOR'S ATTORNEY'S FEES AGREEMENTS ARE VOID AS AGAINST PUBLIC POLICY UNDER THE SPILKER RULE, AND THE FEES MUST BE DETERMINED ON A QUANTUM MERUIT BASIS

■ The Court finds that under the *Spilker* rule discussed above, the intervenors must be treated on the same basis as the members of the entire class. The Court finds each of the intervenors' contracts like those of the *Kiser* class, to be unconscionable and void as against public policy. The Court based its findings on the following facts:

(1) that most of counsel's efforts were merely duplication of class counsel's efforts, and even at that were quite brief with little evidence of legal research; and

(2) that the contracts with all intervenors, except Mr. Moore and Mr. Adkins, were signed long after the commencement of the attorney-client relationship;[8] and

(3) the fees were excessive for the productive efforts actually expended; and

(4) as in the case of the *Kiser* class, it can not be said that the parties, namely the intervenors, and their counsel were on an equal basis; and

---

7. Mr. Hensley's agreement was signed March 12, 1973; Mr. Madden's, March 3, 1972; Mr. Walker and Mr. Smith were notified in a letter from counsel of a contingent fee of

25% of their recovery on April 21, 1972; there is no showing that the men agreed to this amount in writing or otherwise.

(5) it is undisputed that a fiduciary relationship exists between counsel and their clients; see, *Spilker, supra; Udall, supra;* and

(6) the benefits created for the intervenors and the class were of a special nature. In other words, retroactive pension benefits obtained as a result of 20 years work in the coal mines and the reaching of 55 years is meager to say the least. For counsel to benefit from the illegal actions of the defendant trustees and their predecessors would be inconsistent with the high duties of the legal profession to assist the disadvantaged and the downtrodden when in need of legal help.

In saying this, the Court is not unaware of the expenses involved in maintaining a law office and the facilities necessary to provide the kinds of services rendered by all counsel in this case. However, it must again be said that an attorney's public duty represents a higher calling than that of his private or personal interests. Therefore, the Court finds in light of the above considerations the award of fees herein should be determined on a *quantum meruit* basis.

Considering that the *Moore* counsel expended only 130 hours in the case, it is impossible to say that $21,791 in attorney's contingency fees is reasonable, and it would be unconscionable to tax meager lifetime pension benefits to this extent on a *quantum meruit* basis. It is apparent from counsel's diaries that the *Moore* attorney is judicious in the use of his time. However, since the diaries also indicate a good percentage of the time spent was for telephone calls, conferences with other counsel and the attorneys fees question, the Court has discounted the time actually spent by 30%, and multiplied the balance (91) by $40, resulting in an award of a reasonable fee of $3,640 to counsel for *Moore, et al.*

■ The Court will award the *Adkins* group attorneys with the same amount as it did the *Moore* group. After studying the papers filed and diaries submitted, the attorneys for this group should have spent no more time than the *Moore* group attorney. Although the Court recognizes that different attorneys work at different speeds, the Court finds the number of hours the *Moore* counsel spent a better reflection of the actual result produced, and, therefore, applied the same time factor and hourly rate as used to determine the award for the *Moore* group's attorney, $3,640.

## VI. THE COURT HAS THE EQUITY POWER TO TAX ATTORNEY'S FEES AGAINST THE DEFENDANT FUND FOR THE DOMINATING REASONS OF JUSTICE

■ This Court has equity jurisdiction to impose attorney's fees upon the defendant "in exceptional cases and for dominating reasons of justice." Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). Whereas, the Court is mindful of the long standing practice of deducting attorney's fees from the class recovery, so that the burden of the litigation is spread over the entire class benefiting from the suit, an exception exists in this case. Justice requires that the Defendants pay the costs and attorney's fees incurred in this suit to compel the Defendants to discontinue their protracted discriminatory conduct and breach of fiduciary duty. Vaughan v. Atkinson, 369 U.S. 527, 530–531, 82 S.Ct. 997, 88 L. Ed.2d 88 (1962); Rolax v. Atlantic Coast Line R. Co., 186 F.2d 473, 481 (4th Cir. 1951).

At a hearing on August 1, 1973 on the matter of attorneys' fees, counsel for the Defendant Trustees also acknowledged the Court's discretionary power to impose upon them the award of the attorneys' fees for both the class and intervenors. The Defendants raised the question, however, whether the Court should do so, when the effect might be to further limit the fund from instituting the new Trust benefits. The Court realizes that in taxing the Fund, the Fund beneficiaries are the ones who will actually bear the burden. In this instance the Court finds the imposition would neither be burdensome nor unjustified.

The Court based its findings on the facts that the award is a reasonable and modest one, and that the entire Fund benefited from this suit with the prevention of general fiduciary abuse and improvement of the institutional functioning of the Fund as an entity. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391–392, 90 S.Ct 616, 24 L.Ed.2d 593 (1970).

Furthermore, the Court will require the Defendant to pay all legitimate expenses incurred by the parties, as provided by Rule 54(d) of the Federal Rules of Civil Procedure.

The total amounts that the Defendant is ordered to pay are as follows:

(a) Kiser class attorneys

| | |
|---|---|
| attorneys fees | $62,048.00 |
| expenses | 2,725.00 |
| | $64,773.00 |

(b) Moore intervenors

| | |
|---|---|
| attorneys fees | $ 3,640.00 |
| expenses | 891.32 |
| | $ 4,531.32 |

(c) Adkins intervenors

| | |
|---|---|
| attorneys fees | $ 3,640.00 |
| expenses | 276.75 |
| | $ 3,916.75 |

An Order will be entered in accordance with this Opinion.