Jeanne A. JORDAN, individually, and on behalf of all other persons similarly situated, Plaintiff-Appellant,

v.

Margaret M. HECKLER, individually, and in her official capacity as Secretary of the Department of Health and Human Services, Defendant-Appellee.

Jeanne A. JORDAN, individually, and on behalf of all other persons similarly situated, Plaintiff-Appellee,

v.

Margaret M. HECKLER, individually, and in her official capacity as Secretary of the Department of Health and Human Services, Defendant-Appellant.

Nos. 83–1636, 84–1438.

United States Court of Appeals, Tenth Circuit.

Sept. 24, 1984.

Rehearing Denied Jan. 22, 1985 in No. 84–1438.

---

**1398**

Laura M. Rosenthal, Greater Boston Legal Services, Boston, Mass. (Judith R. Ferber, Greater Boston Elderly Legal Services, Boston, Mass., John Fears, Legal Aid of Western Okl., Norman, Okl., Neal S. Dudovitz, Nat. Sr. Citizens Law Center, Los Angeles, Cal., with her on the briefs), for plaintiff-appellant in No. 83–1636 and plaintiff-appellee in No. 84–1438.

John W. Wojciechowski, Atty., Social Sec. Div., Dept. of Health and Human Services, Baltimore, Md., Christine R. Whittaker, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Richard K. Willard, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D.C., Larry D. Patton, U.S. Atty., Oklahoma City, Okl., Randolph W. Gaines, Deputy Asst. Gen. Counsel for Litigation, John M. Sacchetti, Chief, Retirement and Survivors Ins. Litigation Branch, Dept. of Health and Human Services, Baltimore, Md., and William Kanter, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., with them on the briefs), for defendant-appellee in No. 83–1636 and defendant-appellant in No. 84–1438.

Before SETH, Chief Judge, and DOYLE and SEYMOUR, Circuit Judges.

SETH, Chief Judge.

The Social Security Act at 42 U.S.C. § 405(j) provides that benefits under certain circumstances may be paid directly to the applicant or to a representative for the benefit of the applicant. Thus:

> "When it appears to the Secretary that the interest of an applicant entitled to a payment would be served thereby, certification of payment may be made, regardless of the legal competency or incompetency of the individual entitled thereto, either for direct payment to such applicant, or for his use and benefit to a relative or some other person."

The "certification" is the significant act of the Secretary in this context. Procedures have been established to determine the "need" for a representative and "who" it should be with notice to the claimant.

The trial court concluded that the procedure was adequate under the statute and met due process requirements after making the evaluation under *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, and *Tidwell v. Schweiker*, 677 F.2d 560 (7th Cir.). This issue was considered by this court in *McGrath v. Weinberger*, 541 F.2d 249 (10th Cir.).

Thus, this is the approved procedure for the determination of "need" and who is to act as a representative. The plaintiffs in the trial court contested this issue asserting that more was required. However, they did not pursue their appeal on this issue. Their appeal or cross-appeal is now directed only to claims that the person selected as a representative as above described has misapplied the funds.

In this context we should first note a significant and basic statutory provision in 42 U.S.C. § 405(k) which relates to the remaining issue of misuse. This subsection reads in part:

> "Any payment made after December 31, 1939, under conditions set forth in subsection (j), any payment made before Jan-

uary 1, 1940, to, or on behalf of, a legally incompetent individual, and any payment made after December 31, 1939, to a legally incompetent individual without knowledge by the Secretary of incompetency prior to certification of payment, if otherwise valid under this title, shall be a complete settlement and satisfaction of any claim, right or interest in and to such payment."

Under the statute the payment to the representative discharges the Secretary from any further obligation "as to such payment." The plaintiffs thus challenge the procedure followed by the Secretary in handling claims made by beneficiaries (or for them) of misuse of funds by the representative certified to receive payment as above described. The plaintiffs urge that under 42 U.S.C. § 405(b) there should be a hearing and review when such a claim of misuse is made. The Secretary's position and the regulations promulgated under § 405(b) is that only actions which prejudice the claimant's rights specifically provided in the Act trigger an administrative hearing and judicial review. These actions are described as "initial determinations" in the regulations. Claims as to a representative's misuse of funds are not within that category under the regulations. *See Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192. The claimant's right to payments under § 405(j) is established by the certification of payment to the representative.

Under existing procedure the agency examines the objection and makes a decision to request restitution or to take no action. There is no "hearing" on the claim. Again, the Secretary has discharged her duty upon certification and payment. A claim may be the basis for a change in the representative, but this does not have any consequences as to the dollars. There is an adequate remedy for impairment of the free use of benefits. *McGrath v. Weinberger*, 541 F.2d 249 (10th Cir.).

The only action that the agency can take if there appears to be a misapplication of funds by the payee is to "request" restitution and refer the incident to the General Accounting Office. Claims of this nature in this appeal have no relation whatever to a termination of benefits or to the dollars from the agency. The claims could however go against the representative as an individual with state law remedies available. The regulations provide procedures for change of representatives. Requests for a change of representative may be made at any time. The trial court on this matter of claims of misuse of funds again made an analysis under *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, and we agree that the circumstances do not warrant the treatment of such claims as an initial determination.

As we have seen, a hearing on claims of misuse would add no statutorily required nor due process procedures. The trial court ordered that the agency require, beginning at a date in the future, periodic accountings by the representatives. The Secretary apparently has agreed to do this. The accountings would in no way change the legal nature of the proceedings taken on misuse complaints under the Act or as to due process nor add requirements.

We express no opinion as to whether accountings can be required under the Act or for due process reasons.

The judgment of the trial court is affirmed as to its disposition of all issues except the one relating to accountings by representatives which is not considered to be an issue on this appeal.

IT IS SO ORDERED.

*84–1438*

This is an appeal by the Government (consolidated with No. 83–1636) of an Order which assessed attorney fees against it in the amount of $76,159.20 under the Equal Access to Justice Act (28 U.S.C. § 2412). The suit challenged the procedure whereby representatives are selected to receive payments on behalf of Social Security benefit recipients, whether such representatives should be required to make periodic accountings, and how complaints of misuse of funds should be handled.

The portion of the case which was appealed is set forth above in No. 83–1636, *Jordan v. Heckler.*

In this appeal the Government asserts that the trial court was in error in using, at least in part, 28 U.S.C. § 2412(b) of the Act, and so placing reliance on a common fund or common benefit theory. The Government also challenges the "exceptional success" determination by the trial court as it was applied to decide compensable hours in view of the plaintiffs' success on but one out of the three claims advanced. The issue whether the several claims were related or unrelated for this purpose is also raised.

■ We must conclude that the doctrines arising from traditional practice in equity of common fund or common benefit included in 28 U.S.C. § 2412(b) are not applicable to this case. The trial court referred to and used § 2412(b) in its analysis and order. The court in part said: "[J]urisdiction over the subject matter of this suit makes possible an award that will operate to spread the costs proportionately among each of these beneficiaries."

An award of fees against the Secretary does not have such a consequence. If the award is taken from the Social Security Trust Fund it will not in any way reduce the payments to Social Security recipients in representative status. The Trust Fund comes from Social Security taxes on all workers and from general Treasury funds. It is simply an award against the Government or all persons who pay Social Security taxes and is not related or restricted to those on representative status who number some four million.

This situation thus does not resemble the suit against the union in *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702, nor the shareholder derivative cases such as *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593, the issue in *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184, nor the

pension fund in *Kiser v. Huge,* 517 F.2d 1275 (D.C.Cir.).

In *Mills* the court determined that with the fees paid by the corporation, the benefits of the merger suit would be proportionately spread among the shareholders which was the group benefited. In the union case, *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702, the benefits under the disclosure act obtained by the action accrued to each union member and payment out of union funds according to the Court "shift[s] the costs of litigation to 'the class that has benefited ....' " Thus the costs are spread among the group members who have benefited and spread in a reasonable and fair manner. The "spreading" of the burden in the case before us was not among the group which was benefited but placed on a much larger group, most of whom had no interest.

Of course, the basic considerations are expressed by the Court in *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141, where reference in a note is made to its previous opinions:

> "In this Court's common-fund and common-benefit decisions, the classes of beneficiaries were small in number and easily identifiable. The benefits could be traced with some accuracy, and there was reason for confidence that the costs could indeed be shifted with some exactitude to those benefiting."

There is no way in the case before us that with the fees assessed against the Secretary there was any allocation to those four million recipients with representative payees if they were the parties benefited.

Thus again in *Boeing Co. v. Van Gemert,* 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676, the Court said after discussing the common fund cases and the origin of the doctrine:

> "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost

are unjustly enriched at the successful litigant's expense."

And:

"Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit."

The Court in *Boeing* also refers to the statements in *Alyeska* where shifting of fees was appropriate. Thus where the classes benefited were "small in number and easily identifiable," the "benefits could be traced with some accuracy," where the shifting could be accomplished "with some exactitude to those benefiting." Thus the fees here considered can properly be assessed only under § 2412(d) which in part provides that the court shall award fees unless it finds that "the position of the United States was substantially justified or that special circumstances make an award unjust." A maximum per hour rate is specified. The fees are to be "reasonable" and based on the "prevailing market rate." The "reasonable" proviso would seem to draw into the consideration of fees the opinions under other statutes wherein the reasonable standard is expressly provided.

As the opinion on the merits indicates, the plaintiffs advanced three claims and they prevailed on one—that representatives should be required to file periodic accountings. The claim for a hearing before a representative was designated was lost as was a claim for a hearing on claims made against representatives for misuse of funds.

■ Plaintiffs' success was partial. The trial court determined that plaintiffs were the prevailing parties apparently based on the accounting claim. This appears to be a close question. We cannot say however that the trial court abused its discretion. The Secretary had some years before instituted an accounting requirement although of a limited scope. This was dropped, according to the record, because of budget limitations. During the same period as the litigation was underway a study was being conducted as to the need for accountings. This study was completed and filed with the court. It concluded that accountings were necessary. The Secretary did not appeal the trial court's order as to accounting, and indicated that it agreed with it. The Secretary asserts in this appeal that she did not oppose *in principle* the accounting claim in the trial court. The trial court's original order was in general terms.

We have considered various aspects of attorney fees claims under several statutes in *Cooper v. Singer,* 719 F.2d 1496 (10th Cir.), *Ramos v. Lamm,* 713 F.2d 546 (10th Cir.), *Gurule v. Wilson,* 635 F.2d 782 (10th Cir.), *Battle v. Anderson,* 614 F.2d 251 (10th Cir.), and in *Francia v. White,* 594 F.2d 778 (10th Cir.), and other cases.

The Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40, shortly before our decision in *Ramos v. Lamm,* laid down the basic considerations. The Court in March of this year in *Blum v. Stenson,* — U.S. —, 104 S.Ct. 1541, 79 L.Ed.2d 891, in a 42 U.S.C. § 1988 claim, set forth most if not all of the basic standards. It also contains a strong message for the simplification of the analysis. *Blum* also describes the assumptions or presumptions now to be applied to the typical elements. For example, the novelty and complexity are "reflected" in the number of hours; the "skill" element and "quality" are reflected in the reasonableness of the rates. The Court also there states that "results" are subsumed in "other factors used to calculate a reasonable fee." Further, in *Blum* the Court said: "Nor do we believe that the *number* of persons benefited is a consideration of significance in calculating fees under § 1988." (Emphasis in original.) Apparently the only element not treated in *Blum* was that of "risk" of loss.

*Blum,* of course, starts with the position (as in *Hensley*) that the prevailing market rate times reasonable hours should produce a reasonable fee. The inference in *Blum* is

that a strong showing is required for a variation.

*Blum* also for our purposes repeats the "exceptional success" formulation. Thus:

"In sum, we reiterate what was said in *Hensley*: 'where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhancement award may be justified.' *Hensley*, [461] U.S., at [435] [103 S.Ct., at 1940]."

We understand the "excellent results" pertain to the entire litigation—considering it as a whole.

The court here decided that the plaintiffs had obtained "excellent results" although they did not prevail on all their claims. We do not know whether we would have arrived at the same conclusion, but we cannot say that the trial court abused its discretion. The trial court made a finding that the Government's position was not substantially justified, and we find no abuse of discretion on this point.

Thus the fees should be computed on all the hours reasonably expended in the litigation by plaintiffs' counsel within the statutory limitation on the hourly rate since no special circumstances have been found to exist. The trial court made no determination.

The case (84–1438) is remanded for a determination of fees as provided herein. IT IS SO ORDERED.