839 F.2d 1321
 56 USLW 2480, 20 Soc.Sec.Rep.Ser. 527,
Unempl.Ins.Rep. CCH 17,891
 Lois LINQUIST and Alberta E. Burns, Appellees,
v.
Otis R. BOWEN, Secretary of the Department of Health and
Human Services, and United States Railroad
Retirement Board, Appellants.
 Nos. 86-1486, 86-1790 and 86-2075.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 16, 1987.
Decided Feb. 17, 1988.
Rehearing and Rehearing En Banc Denied March 24, 1988.
Rehearing and Rehearing En Banc Denied March 24, 1988.
 
 Frank A. Rosenfeld, Washington, D.C., for appellants.
 Gill Deford, Los Angeles, Cal., for appellees.
 Before LAY, Chief Judge, HEANEY and BOWMAN, Circuit Judges.
 LAY, Chief Judge.
 
 
 1
 In Linquist v. Bowen, 813 F.2d 884 (8th Cir.1987), this court upheld the district court's decision in a nationwide class action concerning the provisions under the Social Security Act, 42 U.S.C. Secs. 301-1397f (1982) and the Railroad Retirement Act, 45 U.S.C. Secs. 231-231v (1982) that each required an offset against an individual's benefits of fifty cents for each dollar the individual earned in excess of the exempt amount. The plaintiff class asserted that retired persons covered by both Acts should have their benefits reduced by only a single fifty-percent offset even though each statute separately required such an offset. The district court ordered that the agencies collect a total of only fifty percent in offsets and required retroactive refunds of benefits back to 1972 for those who had had two offsets collected from their benefits. The Secretary obtained from this court a stay of the district court order pending appeal. In addition to its challenge of the merits, the government raised several jurisdictional arguments. This court sustained jurisdiction over both the Secretary and the Board under mandamus. 813 F.2d at 888.
 
 
 2
 After oral argument and full review of the record, this court affirmed the judgment of the district court. We held that applying both offsets would fail to serve the overriding congressional intent to encourage the elderly to continue working. In sustaining the district court we disagreed with the District of Columbia Circuit Court of Appeals, which reached the opposite result in Burns v. United States R.R. Retirement Bd., 701 F.2d 193 (D.C.Cir.1983) (Judge MacKinnon dissented from that court's decision). The government acquiesced in our judgment and did not petition for certiorari.
 
 
 3
 Thereafter the counsel for the plaintiff class, the Legal Aid of Western Missouri and the National Senior Citizens Law Center, moved for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. Secs. 2412(b) and (d). On September 1, 1987, this court overruled the government's objection and found that the claimant class had successfully established a common benefit for a class of some 2,000 people and that as such plaintiffs were entitled to a fee "to the same extent that any other party would be liable under the common law." This court did not reach the question as to whether plaintiffs were entitled to recover attorney's fees under 28 U.S.C. Sec. 2412(d).
 
 
 4
 We now vacate our order of September 1, 1987, and hold that plaintiffs' attorneys have not demonstrated a legal basis permitting recovery under either section 2412(b) or section 2412(d).
 
 Section 2412(d)[1]
 
 5
 Although counsel has urged on rehearing that the plaintiff class is entitled to attorney's fees under section 2412(d) because the government was not substantially justified in its conduct in withholding payment and in its litigation defense, we cannot agree. The test for substantial justification was set forth in United States v. 1,378.65 Acres of Land, 794 F.2d 1313 (8th Cir.1986). In that case we said: "In meeting that standard, we conclude that the Government now must show not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct." Id. at 1318 (footnote omitted). We find that the government, although in error in assessing the one hundred-percent offset accumulated under both statutes, was neither litigating in bad faith nor without substantial justification for its position.
 
 
 6
 In the litigation in this court the government not only challenged the statutory interpretation of both acts but also challenged the jurisdiction of both the district court and this court to pass upon the claim. These jurisdictional arguments are set forth in our prior opinion. Although we ruled against the government on those issues as well, we cannot say that the government either acted in bad faith or was without substantial justification in raising those jurisdictional challenges. In addition, as we appraise the merits of the case, we find that three judges of this court felt the issue on the merits was sufficiently close to enter an order staying the effects of the district court's order of relief. That stay order remained in effect until our opinion was entered.
 
 
 7
 Throughout the litigation, the government urged that the analysis made by our sister circuit in the District of Columbia was correct. We note that a distinguished panel of judges sat on the appeal in the District of Columbia, and although we did not agree with that panel's holding, it is difficult for us to say that their analysis was lacking in persuasive effect or reason. We found the issue on the merits to be a close one and although we gave great import to the analysis of the government and the D.C. Circuit we felt the more persuasive reasoning and analysis compelled the opposite result. Under these circumstances, it would be difficult for us to say that the government's position was not substantially justified so as to entitle plaintiffs to recover attorney's fees under 28 U.S.C. Sec. 2412(d).
 
 Section 2412(b)[2]
 
 8
 We now turn to the argument concerning section 2412(b). That section permits recovery of attorney's fees by a successful litigant in a suit against the government "to the same extent that any other party would be liable under the common law * * *." There are three recognized exceptions to the American rule[3] which the plaintiffs may assert in order to recover attorney's fees under that subsection. In the legislative history relating to the passage of section 2412(b), the committee report makes reference to the liability of the United States for fees under "bad faith", "common fund", and "common benefit" theories.[4]
 
 
 9
 Under 28 U.S.C. Sec. 2412(c)(2) Congress has expressly stated that the agencies themselves are not directly responsible for any fees awarded under section 2412(b) unless there is a finding of bad faith. Absent such a finding, section 2412(c)(2) states that the fees are to be paid by the Treasury. The legislative history clarifies that this is the intended result:
 
 
 10
 To allow recovery of fees from the agencies or from the U.S. Treasury, and to authorize appropriations for that purpose. The Senate bill had provided that funds for most of this bill come from the agencies involved, and that no appropriations could be made for this specific purpose. This restriction was opposed as unduly punitive (there is an accounting procedure in the reporting section), and would result in a forced appropriation. This amendment insures that the prevailing party will be awarded a fee if it meets the requirements in the bill. It also keeps the language providing payment for "bad faith" actions by the agency involved.
 
 
 11
 H.R. 96-1418, 96th Cong.2d Sess. 12, reprinted in 1980 U.S.Code Cong. & Admin.News 4984, 4991.
 
 
 12
 The common fund theory permits a successful litigant to recover attorney's fees from the fund created by the litigation. The attorney's fees are thus paid proportionately by the non-litigating members of the class.[5] There is thus a more direct sharing in the award of attorney's fees by all the members of the class who benefited from the plaintiff's efforts. Thus it is somewhat anomalous to say that fees are charged against the government in that instance. Under a common fund theory, the primary benefit to be derived by a plaintiff class from section 2412(b) is that the fee may be awarded when the action is against the United States. In that sense, the United States waives its sovereign immunity to allow the claim for such fees. The D.C. Circuit has recognized the common fund theory, but a contrary result has been reached by the Tenth Circuit which said the common fund exception cannot be asserted against the United States, because the fundamental theory of the common fund recovery is not compatible with the fact that the United States Treasury would have to pay the attorney's fees. Compare Puerto Rico v. Heckler, 745 F.2d 709 (D.C.Cir.1984) with Jordan v. Heckler, 744 F.2d 1397 (10th Cir.1984). As noted above we need not decide the applicability of the common fund theory as counsel waived recovery under that theory. See n. 5, supra.
 
 
 13
 There are two other possible theories upon which the plaintiff might prevail under section 2412(b), assuming that the theories are recognized at common law. The first of these two possible theories is the common benefit theory under which this court originally awarded the fees; the other possibility is if there is some equitable theory available to plaintiffs as private attorneys general.
 
 
 14
 The Supreme Court's decisions in Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973) (union member challenged his expulsion; entire union benefits; "dispell[ed] the 'chill' cast upon the rights of others." Id. at 8, 93 S.Ct. at 1948) and in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) (derivative action challenging proxy statement) recognize a recovery under the common benefit theory. There is no question that the plaintiff class has established a common benefit for a class of some 2,000 people. In this sense we find the suit has served public policy and that there is much merit in Linquist's argument that there is public good in the requirement that the agency comply with the statutory mandate of Congress. The difficulty we encounter in extending these suits to the present situation is that the common law basis of the common benefit theory envisioned a fee-shifting to the unnamed beneficiaries of the litigation. In F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974), the Court stated:
 
 
 15
 We have long recognized that attorneys' fees may be awarded to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or where a successful litigant has conferred a substantial benefit on a class of persons and the court's shifting of fees operates to spread the cost proportionately among the members of the benefited class.
 
 
 16
 Id. at 129-30, 94 S.Ct. at 2165 (footnotes omitted; emphasis added).
 
 
 17
 The plaintiff class urges that the instant case is analogous to Kiser v. Miller, 364 F.Supp. 1311, 1320 (D.D.C.1973), aff'd on this point sub nom., Kiser v. Huge, 517 F.2d 1237, 1257 (D.C.Cir.1974). In Kiser, suit was brought against certain pension trustees to require compliance with their obligations to equitably administer retiree benefits. The court awarded attorney's fees on the basis that there was bad faith on the part of the trustees and added as well that "the entire Fund benefited from this suit with the prevention of general fiduciary abuse and improvement of the institutional functioning of the Fund as an entity." Kiser, 364 F.Supp. at 1321.
 
 
 18
 Recovery against the government has been denied in several decisions even though there was a public benefit. The common benefit rule failed because of the inability of the class to share in the proportionate cost of the litigation. As the government argues, if the fee is to be paid by the United States then all taxpayers must share in the fee and not just those that are benefited by the specific action brought in the instant case. This was the basis of the rejection of the common benefit theory in Jordan v. Heckler, 744 F.2d 1397 (10th Cir.1984), wherein plaintiff class brought suit against the Secretary to discharge certain statutory obligations and alleged that the procedure followed by the Secretary in handling claims by beneficiaries constituted a misuse of funds. In disallowing attorney's fees, that court quoted both Mills and Hall and stated:
 
 
 19
 In Mills the court determined that with the fees paid by the corporation, the benefits of the merger suit would be proportionately spread among the shareholders which was [sic] the group benefited. In the union case, Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702, the benefits under the disclosure act obtained by the action accrued to each union member and payment out of union funds according to the Court "shift[s] the costs of litigation to 'the class that has benefited....' " Thus the costs are spread among the group members who have benefited and spread in a reasonable and fair manner. The "spreading" of the burden in the case before us was not among the group which was benefited but placed on a much larger group, most of whom had no interest.
 
 
 20
 Jordan, 744 F.2d at 1400. The same analysis was made by the D.C. Circuit in Grace v. Burger, 763 F.2d 457 (D.C.Cir.), cert. denied, 474 U.S. 1026, 106 S.Ct. 583, 88 L.Ed.2d 565 (1985). That court stated:
 
 
 21
 "Unlike in Hall and Mills, the defendant, United States, is more than just a representative of all the beneficiaries of the litigation. An award of attorney fees would ultimately be born[e] by all taxpayers, rather than just those benefiting from the injunctive order. As such, ... the common benefit theory is inapplicable in cases such as this where plaintiffs seek injunctive relief against the government. [Citations omitted.]
 
 
 22
 "... The common benefit theory is designed to avoid unjust enrichment of beneficiaries to a law suit who are not named plaintiffs. An award of fees here would not compel the beneficiaries to compensate the winning litigant who acted as their representative, but would assess costs against the unrelated losing party. This, clearly, is inconsistent with the American rule and the common benefit exception."
 
 
 23
 Id. at 459-60 (quoting Trujillo v. Heckler, 587 F.Supp. 928, 930-31 (D.Colo.1984)).
 
 
 24
 In essence what the plaintiffs seek here is a recovery as private attorneys general, those who sue the government and vindicate the public right, similar to that sought by counsel in the landmark decision in Alyeska Pipeline Co. v. Wilderness Soc'y, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Although Alyeska was decided prior to the amendment of section 2412 it does demonstrate that the common benefit theory and the private attorney general theory are to be fashioned by Congress rather than by the courts. In Alyeska, the Supreme Court noted:
 
 
 25
 "[T]his litigation may well have provided substantial benefits to particular individuals and, indeed, to every citizen's interest in the proper functioning of our system of government. But imposing attorneys' fees on Alyeska will not operate to spread the costs of litigation proportionately among these beneficiaries...."
 
 
 26
 Id. at 245 n. 14, 95 S.Ct. at 1616 n. 14 (quoting that case in the court below Wilderness Soc'y v. Morton, 495 F.2d 1026, 1029 (D.C.Cir.1974)). Nonetheless, in that case, the D.C. Circuit did award fees under the private attorney general rationale on the basis that the class had acted to "vindicate important statutory rights of all citizens * * *." Wilderness Society, 495 F.2d at 1032. "Acting as private attorneys general, not only have they ensured the proper functioning of our system of government, but they have advanced and protected in a very concrete manner substantial public interests." Id. at 1036. The court of appeals concluded, however, that sovereign immunity precluded an assessment of those fees against the United States. That court thus ordered the private defendant to pay one half of the attorneys' fees and ordered that the plaintiffs must absorb the other half. Its rationale was that there was no Congressional authorization to award fees against the United States. This decision was reached prior to the amendments to section 2412.
 
 
 27
 In discussing fee-shifting statutes in Alyeska, the Supreme Court stated:
 
 
 28
 But congressional utilization of the private-attorney-general concept can in no sense be construed as a grant of authority to the Judiciary to jettison the traditional rule against nonstatutory allowances to the prevailing party and to award attorneys' fees whenever the courts deem the public policy furthered by a particular statute important enough to warrant the award.
 
 
 29
 Alyeska, 421 U.S. at 263, 95 S.Ct. at 1624-25. Even though the class here has acted to vindicate important statutory rights of all, such cannot be the basis for an award of attorney's fees absent congressional authorization.
 
 
 30
 The fundamental question now remains as to whether or not the passage and amendment of section 2412(b) should vindicate the D.C. Circuit by being construed as a statute that should allow recovery as a private attorney general. The Supreme Court has yet to pass on this question.
 
 
 31
 The legislative history of section 2412 perhaps suggests that Congress intended to make a statutory exception against the United States under a private attorney general theory. For example, the House Report recites:
 
 
 32
 The exception created by S. 265 focuses primarily on those individuals for whom cost may be a deterrent to vindicating their rights. The bill rests on the premise that a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy. An adjudication or civil action provides a concrete adversarial test of Government regulation and thereby insures the legitimacy and fairness of the law. An adjudication, for example, may show that the policy or factual foundation underlying an agency rule is erroneous or inaccurate, or it may provide a vehicle for developing or announcing more precise rules. The bill thus recognizes that the expense of correcting error on the part of the Government should not rest wholly on the party whose willingness to litigate ar [sic] adjudicate has helped to define the limits of Federal authority. Where parties are serving a public purpose, it is unfair to ask them to finance through their tax dollars unreasonable Government action and also bear the costs of vindicating their rights.
 
 
 33
 H.R. 1418, 96th Cong., 2d Sess. 10, reprinted in 1980 U.S.Code Cong. & Admin.News 4984, 4988-89.
 
 
 34
 Further analysis of this report, however, demonstrates that this language must be read in conjunction with section 2412(d) rather than section 2412(b). Immediately following the quoted section, the report discusses the language of the substantial justification rule and then states that where the government can show that its case had a reasonable basis both in law and fact no award will be made. Id. at 4989.
 
 
 35
 Our analysis under the common benefit theory, which comports with the other circuit courts, is that such a theory cannot prevail against the United States except perhaps in the narrow situation where a taxpayer suit is brought to challenge the expenditure under a federal statute.[6] Taxpayer suits against the government have had a checkered existence on the issue of standing. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923).
 
 
 36
 Our analysis made here is to express our general concern that the amendment to the Equal Access to Justice Act under section 2412(b) serves little purpose. It certainly does not vindicate those litigants who seek to challenge erroneous governmental action as here, in that attorney's fees must be borne by the successful litigant even though a broader class of people benefit. In this sense, based upon the analysis of all of the various cases under section 2412(b), it would seem that section 2412(b) serves as a seldom-authorized basis upon which any attorney's fees can be awarded. In this sense also, the judicial interpretation of it may be a perversion of the intent of Congress. However, notwithstanding that intent as expressed in the floor debate,[7] and as manifested in the reports of both houses of Congress the courts must interpret the express language of the statute. Here the court is left to an analysis of exceptions that exist at common law and not exceptions that exist by reason of statutory enactment of specific instances. See Alyeska, 421 U.S. 247-71, 95 S.Ct. at 1616-29. The fact remains that the common law theories of common fund and common benefit simply are not applicable against the United States in this instance and, therefore, it would seem that the language used by Congress in section 2412(b) has very little utility to the litigant who seeks to challenge erroneous governmental application of congressional laws.
 
 
 37
 Based on the foregoing analysis, we hereby vacate our order of September 1, 1987, and disallow an award of attorney's fees to the plaintiff class.
 
 
 
 [1]
 That section states in part:
 Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
 28 U.S.C. Sec. 2412(d)(1)(A).
 
 
 [2]
 That section states:
 (b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.
 28 U.S.C. Sec. 2412(b).
 
 
 [3]
 The American rule disallows an award of attorney's fees to a prevailing party, absent express statutory authority. The rule in England has permitted a successful plaintiff to recover his fees since 1278. "Statute of Gloucester, 1278, 6 Edw. 1, c.1. This statute, which expressly mentioned only 'the costs of his writ purchased,' was from the outset liberally construed to encompass all legal costs of suit, including counsel fees." Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717 n. 7, 87 S.Ct. 1404, 1406 n. 7, 18 L.Ed.2d 475 (1967). For a detailed history of the development of the American rule and its exceptions see Alyeska Pipeline Co. v. Wilderness Soc'y, 421 U.S. 240, 247-70, 95 S.Ct. 1612, 1616-28, 44 L.Ed.2d 141 (1975)
 
 
 [4]
 We need not pause long on the bad faith exception because of our foregoing analysis under section 2412(d). The bad faith exception under section 2412(b) is not an enlargement of that exception under section 2412(d), other than the fact that section 2412(d) contains limitations on the party and on the amount of the recovery which are absent from section 2412(b)
 
 
 [5]
 At oral argument, appellees' counsel stated that they would be reluctant to assess a fee against the plaintiff class and in that sense we understand counsel to have expressly waived any desire to assert a claim to a fee against a common fund composed of the retroactive benefits or prospective benefits that the class might have
 
 
 [6]
 This court en banc has held that subsection (b) does not apply in a suit brought against the Veterans Administration where the attempt to collect attorney's fees was arguably analogous to a section 1983 action brought against state officials. Premachandra v. Mitts, 753 F.2d 635 (8th Cir.1985) (en banc). There, this court held that because the plaintiff did not allege that defendants acted under color of state law no liability could be found under section 1983. Thus the action was not brought to enforce a provision enumerated under section 1988
 
 
 [7]
 During the Senate debate on the amendment, Senator Dominici discussed the rationale for payment from the Treasury, which presumed that section 2412(b) would be applicable in suits brought against the government to vindicate an individual's rights:
 I am not terribly concerned if it ends up costing a few million dollars. In fact in circulating this amendment, there was a great deal of enthusiasm and some said I should put another clause in it to say that any agency that is the loser to this citizen will take these attorneys' fees out of their budget. I almost put that in there, but I want the Senate to know that it is not. It will have to be paid for out of general appropriations.
 But the Senators who suggested the latter said that would be even more of a deterrent, because if OSHA found themselves paying $2 million in attorneys' fees because they got beaten for some of their fines that are unreasonable, or thier [sic] rules that are out of line, or if EPA got the same, or any of the other myriad Federal agencies, maybe they would begin to look at their fieldmen and say, "Hey, you are costing us money by doing things that the courts end up saying you are wrong on." I admit that might be more of a deterrent, but in this case, I shall settle for the general kind of funding such as that provided for our poor in this legal services bill. But in this case, I say, provide it to the taxpayer, the average American that is burdened, so he will really be made whole when he has to fight with his Government and wins. Then, admittedly, I want to build a little enthusiasm in the average American to fight some bureaucracy without figuring that, if they win, they lose. Because, at least in this instance, if they win, they will get their attorney's fees and costs and professional witnesses and witness' fees paid for by that very Government that they thought started out benevolent in these laws, with high-sounding goals that end up, rather frequently, on the opposite side of that, harassing and bothering the average American for no good.
 
 
 [126]
 Cong.Rec. 28,845 (1980). Senator Dominici later expanded upon these remarks and directly addressed the situation presented by Linquist:
 There have been numerous documented cases of conflicting regulations in areas of overlapping jurisdiction of various agencies. Regulations have proliferated as agencies have expanded their jurisdiction, unchallenged, through regulatory fiat.
 This bill will, as Elihu Root said, allow the agencies of regulation to be regulated by those affected by their regulation. Those who are affected by regulations will be given the incentive to challenge such regulations. Today, the prevailing attitude is, "if I win in court, I still lose because of the cost."
 
 
 [126]
 Cong.Rec. 28,846 (1980)